## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

EBONY ROBERTS, ROZZIE SCOTT,
LATASHA COOK and ROBERT LEVI,

      Plaintiffs,

v.

ROBERT J. BLACK, in his individual and
official capacities, and BOGALUSA CITY
COURT,

      Defendants.

Case No.

**COMPLAINT**

**CLASS ACTION**

## I.      <u>PRELIMINARY STATEMENT</u>

1.      Defendants Judge Robert J. Black ("Black") and the Bogalusa City Court ("City Court") operate a modern-day debtors' prison, jailing the poor for their failure to pay. Defendant Black routinely orders individuals to jail for non-payment of monetary penalties for minor traffic and misdemeanor offenses without inquiring into the reason for non-payment.

2.      The City Court is funded off the backs of the poor. It substantially relies on the court costs and fees it collects from criminal defendants. The City Court routinely covers at least 15% of its expenditures through income it generates from criminal defendants. This structural conflict of interest creates an incentive for Defendant Black to find individuals guilty and to coerce payment through the threat of jail. Without this money, the City Court could not function.

3.      This incentive is exemplified through Defendant Black's creation of a $50 "extension fee" to raise additional money to operate the City Court. This extension fee is not authorized by state law. However, Defendant Black gives individuals unable to pay their

monetary penalties in full a false choice: they may either go to jail for non-payment of fines and costs or pay this illegal $50 extension fee to buy additional time to pay their monetary penalty.

4.      Plaintiffs Rozzie Scott ("Scott") and Ebony Roberts ("Roberts") fear they will be incarcerated for non-payment, forced to make an illegal payment, and deprived of due process by having their cases decided by a biased judge at their upcoming court hearings.  Neither has the ability to pay the hundreds of dollars in fines and costs they owe the City Court.

5.      Plaintiffs Scott, Roberts, Latasha Cook ("Cook"), and Robert Levi ("Levi") were previously victimized by this funding system and were forced to accept the false choice of paying the illegal $50 extension fee to avoid being jailed.  Each of these Plaintiffs paid the City Court $50 to purchase their freedom.

6.      Defendants' unconstitutional practices have affected, and will continue to affect, hundreds of low-income people with citations for traffic tickets or misdemeanor violations in the City of Bogalusa, Louisiana.  Plaintiffs bring these claims on behalf of themselves and all others similarly situated to seek a declaration that Defendants' practices are unconstitutional, to seek an injunction to enjoin them from continuing these practices, and to seek damages to recover the illegal extension fee for those who paid it in the past year.

## II.      JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

### III.      PARTIES

**A.      Plaintiffs**

9.      Plaintiff Ebony Roberts is a resident of Bogalusa, Louisiana.

10.      Plaintiff Rozzie Scott is a resident of Bogalusa, Louisiana.

11.      Plaintiff Latasha Cook is a resident of Bogalusa, Louisiana.

12.      Plaintiff Robert Levi is a resident of Bogalusa, Louisiana.

**B.      Defendants**

13.      Defendant Robert J. Black is the sole judge who sits on the Bogalusa City Court in Bogalusa, Louisiana.  He is sued in his individual and official capacities.

14.      Defendant Bogalusa City Court is a government entity located in Bogalusa, Louisiana.

### IV.      STATEMENT OF FACTS

**A.      Defendant Black Oversees and Administers the Bogalusa City Court.**

15.      Bogalusa is a town of about 12,000 people located in Washington Parish, Louisiana, approximately 1.5 hours north of New Orleans, Louisiana.  The town's economy centers on the lumber and paper mills.  Nearly 36% of the population in Bogalusa lives below the poverty line.  The median household income was $25,036 in 2015, less than half of the median household income in the United States.

16.      The City Court is authorized to hear cases involving city ordinance violations, including traffic tickets and misdemeanors, which are committed within Ward Four of Washington Parish.  Defendant Black is the only judge who sits on the City Court.

17.      Defendant Black is elected to his position as judge of the City Court.

18.      Defendant Black is authorized to appoint and remove clerks and deputy clerks for

the City Court.

19.     Defendant Black possesses administrative, executive, and judicial powers over the City Court.   In his administrative capacity, Defendant Black is responsible for the orderly administration of the City Court.   In his executive capacity, Defendant Black is responsible for the City Court's finances, including creating a budget for the City Court and ensuring the City Court has sufficient funds to pay employee salaries and the City Court's overhead expenses. Finally, in his judicial capacity, Defendant Black is responsible for impartially adjudicating municipal and misdemeanor cases before the City Court.

20.     Defendant Black is authorized to create policies and rules for the conduct of judicial business before the City Court.   This power includes practices with regard to the City Court's collection of fines and court costs.

### B.     The Bogalusa City Court Systematically Jails and Threatens to Jail Individuals Who Cannot Pay Fines and Court Costs that Fund the City Court.

21.     The Bogalusa City Court typically conducts criminal proceedings once per week, on Monday mornings and afternoons.

22.     On behalf of the City Court, Defendant Black imposes a jail sentence against the majority of individuals who plead guilty or are found guilty after trial.   However, he suspends most sentences on the condition that the individual pay fines and court costs.   A suspended jail sentence is commonly referred to as "default time."

23.     If an individual cannot pay the fine and court costs in full on the sentencing date, Defendant Black orders the individual to return to the City Court by their "pay date."   The pay date functions as the deadline by which Defendant Black expects the individual to pay the fines and court costs.

24.     The City Court does not accept partial payments or allow an individual to make payments on an installment plan.  Any monetary obligation to the City Court must be paid in full.

25.     During both the sentencing proceeding and subsequent pay date proceeding, Defendant Black does not inquire into the reasons for non-payment if an individual failed to pay the fines and court costs.  Nor does he distinguish between those individuals who willfully refuse to pay and those who cannot pay due to their indigence.

26.     Neither Defendant Black nor anyone acting on behalf of the City Court provides or appoints counsel to persons appearing at pay date proceedings.

27.     Neither Defendant Black nor anyone acting on behalf of the City Court provides notice in advance of the pay date proceedings that the person's ability to pay will be a critical issue at the hearing if they are unable to pay, or provides the individual during or before the hearing with a form (or its equivalent) designed to elicit information about the individual's financial circumstances.

28.     When a person appears at a pay date and does not have the money to pay the monetary penalty, Defendant Black often allows some individuals to pay a $50 "extension fee" to purchase their freedom and be permitted additional time to pay their monetary penalty.[1]

29.     Defendant Black instructs those who cannot afford the $50 "extension fee" or who are not given that option to sit in seats at the front of the courtroom for the remainder of the court session.

30.     A City Court marshal generally allows individuals to leave the courtroom to make

---

[1] This extension fee is described in greater detail at Paragraphs 51 through 58.

phone calls to family and friends to try to arrange for payment while court remains in session.  A marshal escorts out of the courtroom those individuals permitted to make phone calls to arrange for payment.  The marshal stands by the individual while he or she attempts to contact family, friends, or co-workers to explain that he or she will be arrested and jailed if the fines and court costs are not paid by the end of the court session.  If family, friends, or co-workers bring money to pay the fines and court costs to the courthouse before the end of the court session, the individual is allowed to pay and to leave.

31.     At the end of the court session, the marshal walks those who could not pay down the courthouse steps and to the jail in an adjacent building, and books them into the City jail. Sometimes the marshal does this by handcuffing persons together.

32.     The City Court clerk's minute entries record when a person is sent to jail for non-payment, noting that the person has failed to pay and is ordered to serve time in jail or to remain in jail until a certain amount is paid.  To illustrate, in the sample minutes below, Defendant Black orders an individual to either serve "50 days default time" or pay $575.00 for not having proof of insurance or a license plate:

```
                         City Court of Bogalusa, LA

             IN AND FOR WARD FOUR, WASHINGTON PARISH, LOUISIANA

                         COURTROOM MINUTES
                         ORI#

     Defendant:███████████
     Date Of Birth
     2014838        S  06/07/2014 32:862 NO PROOF OF INSURANCE
     2014837        C  06/07/2014 1341:53 D NO MVI/SWITCHED/ALTERED MVI
     2014836        C  06/07/2014 1341:51 NO LICENSE PLATE

The City Court of Bogalusa convened this date pursuant to previous assignment:
PRESENT: HON. ROBERT J. BLACK, JUDGE; THE DEFENDANT; HON.DAVID DUKE ADA/CITY
PROSECUTOR; JOHN SUMRALL, MARSHAL and NIKKI S. BOONE, DEPUTY CLERK and
REPORTER.


The defendant having failed to pay the previously assessed fine/costs on the
charge/charges
the court found the defendant in contempt and sentenced the defendant to serve
a period of 50 days default time or to pay $575.00
```

6

33.     Any individual arrested for non-payment can be released from jail if the fine and court costs are paid in full or if the individual serves the default time.

34.     The City's jail logs document the amount of money an individual must pay or the amount of time the individual must serve to be released from jail.  In the example below, an individual was ordered to serve 160 days in jail unless he paid a $724 "cash fine":



35.     If an individual fails to appear at the pay date, Defendant Black issues an attachment for the individual's arrest and orders the individual to serve 15 days in jail or to pay a $250 cash bond.  In the sample below, Defendant Black sentenced an individual to a pay or stay sentence of "15 days" in jail or a "$250.00 contempt fee":



36.     Defendant Black sometimes announces in open court when issuing such attachments that a person that fails to appear to pay can "buy their way out of jail."

37.     Defendant Black's announcement that a person can "buy their way out of jail" is reflected in the jail logs.  In the example below, an individual paid a fine of $250 to "shorten

[her] sentence of 15 days":

| RELEASE | ████████████ | W | F | ████ 03/31/2015 09:44 | 08/27/2015 08:00 |
| 30698 | | | ARREST | 2008080247 | |

Arresting Officer: COCKRELL, SGT JAMES E          How Released: RELEASED, TIME SERVED

Release Notes: ON 7/3/15 PAID FINE OF $250 TO SHORTEN SENTENCE OF 15 DAYS
8/27/15 RELEASED TIME SERVED

Charge:  FTA          FAILURE TO APPEAR-ATTACHMENT

Release Notes: ON 7/3/15 PAID FINE OF $250 TO SHORTEN SENTENCE OF 15 DAYS
8/27/15 RELEASED TIME SERVED

## C.  The Bogalusa City Court Substantially Relies on Court Costs and Fees to Fund its Court Operations.

38.      The State of Louisiana does not have a unified funding system for the State's courts and does not oversee the budgets of city courts.  Instead, as the Louisiana Supreme Court reported to the Legislature in 2014, self-generated and local funds—not state funds—represent the largest sources of revenue in the majority of courts.  As the Louisiana House of Representatives has noted, city courts are funded through the use of court costs and fees that are imposed on those persons appearing before the City Court.

39.      The City Court's operating expenses are paid through four sources of revenue: the State of Louisiana, the Washington Parish Government, the City of Bogalusa, and the City Court itself through assessments of certain costs and fees.

40.      The funds the City of Bogalusa, Washington Parish, and the State of Louisiana provide for the City Court, however, are insufficient to cover the City Court's operating expenses.  The following table illustrates the City Court's total revenue from the City, Parish, and State ("Total Governmental Funding"); its total expenditures; its shortfall; and the shortfall as a percentage of total expenditures, for 2009 to 2014:

**Bogalusa City Court Governmental Revenues and Expenditures 2009-2014**

| Year | Total Governmental Funding | Total Expenditures | Shortfall | Shortfall as % of Expenditures |
|------|---------------------------|--------------------|-----------|--------------------------------|
| 2009 | $109,062 | $161,310 | $52,248 | 32.4% |
| 2010 | $120,509 | $176,171 | $55,662 | 31.6% |

| 2011 | $210,049 | $280,043 | $69,994 | 25% |
| 2012 | $212,910 | $293,024 | $80,114 | 27.3% |
| 2013 | $253,641 | $364,000 | $110,359 | 30.3% |
| 2014 | $280,357 | $386,934 | $106,577 | 27.5% |

41.    The remainder of the City Court's operating expenses not funded by the contributions of the State, Parish, and City are funded through court costs and fees collected in criminal cases; court fees collected in civil cases; and reserves of these same fees collected in prior years.

42.    Defendant Black is authorized under multiple state statutes to assess a variety of court costs in criminal cases.  Although most of these court costs are disbursed to other entities, Defendant Black is also authorized to assess up to $30 under  La. Stat. Ann. § 13:1899 against every defendant who is found guilty or forfeits his bond.  This court cost is different than other court costs because Defendant Black is authorized by state statute to keep and spend the money generated under La. Stat. Ann. § 13:1899 to support the City Court's operations.

43.    As the top official of the City Court, Defendant Black, in his administrative and executive capacity, has the sole discretion over how to spend the money generated under La. Stat. Ann. § 13:1899.

44.    In his administrative and executive capacity, Defendant Black has established a practice of assessing $30 in some cases under La. Stat. Ann. § 13:1899 and $29.50 in other cases, depending on the charge.  He has created and authorized a case costs schedule for the City Court that reflects whether to charge $30 or $29.50 based on the charge.

45.    When imposing a monetary penalty, Defendant Black specifies a specific fine amount and then refers generally to "costs."  The specific amount of costs is later assessed by a court employee based on the schedule.

46.    In his administrative and executive capacities for the City Court, Defendant Black

has ordered the Clerk of Court to create a "judicial expense" account for the City Court and instructed the clerks to deposit the statutory court costs under La. Stat. Ann. § 13:1899 into that account.  In addition to these costs, the judicial expense account consists of money collected from extension fees and contempt fees for non-payment and failure to appear.  No other sources fund the City Court's judicial expense account.

47.     Costs assessed against criminal defendants comprise a substantial portion of the City Court's yearly operating budget.  For example, the City Court generated nearly $57,000 for its "judicial expense" account in 2014 through court costs assessed under La. Stat. Ann. § 13:1899, extension fees, and contempt fees for non-payment—an amount that represented approximately 15% of the City Court's operating budget.  In 2015, the City Court generated even more court-controlled revenue—at least $64,000 in judicial expense funds from court costs and fees and at least $5,000 in extension fees—an amount that represented about 20% of the City Court's revenues and expenditures in its proposed operting budget.[2]

48.     Defendant Black controls the judicial expense account in his executive and administrative capacity for the City Court and has sole discretion under state law to determine how these funds are allocated to pay for the City Court's operating expenses.

49.     If a person is unable to pay, Defendant Black possesses alternative tools to serve the City Court's peneoligical interests, including remitting some of the fines and court costs assessed (including the court cost retained by the City Court pursuant to La. Stat. Ann. § 13:1899); collecting the fines and costs as a money judgment in a civil case rather than by using

---

[2] The City Court's final operating budget—showing both proposed and actual income and expenditures—is reflected in an annual audit report created by the Legislative Auditor's office; for fiscal year 2015 that audit report will likely be published in late July 2016.

criminal sanctions; and creating alternative punishments.  Defendant Black may not jail that person for nonpayment without first finding that the nonpayment was willful.

50.     The manner in which Defendants fund the City Court creates a structural conflict of interest between Defendant Black's duty to impartially adjudicate cases and his executive responsibility to raise money to pay for the City Court's operating expenses.  The City Court cannot operate if Defendant Black does not find defendants guilty and does not successfully collect court costs and fees from a substantial number of individuals who appear before him.

### D.     The Bogalusa City Court Has Created an Illegal Extension Fee to Generate Additional Revenue.

51.     In his executive and administrative capacities, Defendant Black created a $50 "extension fee" on behalf of the City Court.  The money collected through this extension fee is used to pay for the operations of the City Court.

52.     The "extension fee" is not authorized by state law.

53.     City courts are not authorized to create new court costs and fees under state law; that authority is limited to the Louisiana State Legislature.

54.     Through the creation of this fee, the City Court authorized Defendant Black, acting in his judicial capacity, to offer a false choice to individuals who cannot pay fines and court costs by the pay date: either (a) pay the extension fee by the end of the court session (or in some cases, shortly after booking) and be granted additional time to pay the fines and court costs, or (b) go to jail until all fines and costs are paid or the underlying sentence is served.

55.     The $50 "extension fee" is not memorialized in an order because it is not actually ordered by Defendant Black.  Rather, it is treated by the City Court as an alternative collection method, to permit the person to pay more in order to have additional time to try to pay the monetary penalty.

56.     If a person is not able to pay the illegal $50 extension fee before the end of court, she is processed into the jail.  But if she obtains it shortly after being jailed, she may be permitted to be released, as reflected in the jail records.  For example, in the below jail log excerpt, the person was jailed at 2:52pm and was released 19 minutes later, after paying the extension fee:



57.     The money collected as an extension fee is not credited toward an individual's fines or court costs.  Instead, it is treated as a separate and additional fee.

58.     In 2015, the City Court collected the extension fee from at least 100 individuals, netting at least $5,000 to pay for the City Court's operating expenses.

**E.      Plaintiffs Ebony Roberts and Rozzie Scott Face Unconstitutional Treatment at Upcoming Court Dates and Have Been Subjected to Unconstitutional Policies and Practices in the Past.**

**i.      Plaintiff Rozzie Scott**

59.      Plaintiff Rozzie Scott appeared in front of Defendant Black on May 12, 2016, and was found guilty of stealing $5 worth of food from a local store to feed his family.

60.     Defendant Black ordered Mr. Scott to pay a $450 fine plus costs on or before June 13, 2016.

61.      Mr. Scott returned to the City Court on June 13, 2016, but did not have the money to pay his fine and court costs.  After telling Defendant Black that he could not pay, Defendant Black asked him if he had $50 for an extension of time to pay the fine and costs.

62. After Mr. Scott told Defendant Black that he did not have $50, Defendant Black told Mr. Scott to sit in a chair on the side of the courtroom and wait for his arrest. Defendant Black never asked him why he did not have the money or whether he was working.

63. While Mr. Scott waited, Defendant Black told other defendants that they would go to jail if they could not pay the extension fee or their fines plus costs.

64. At the end of court, Mr. Scott was arrested and booked into the City jail, where he spent about four hours until his cousin paid the $50 extension fee for his release.

65. After Mr. Scott was released from jail, he was told that he had to pay the fine plus costs on or before July 25, 2016.

66. Mr. Scott faces an imminent threat that he will be jailed because he cannot afford to pay the $450 fine plus costs that he owes the City Court on or before July 25, 2016.

67. Mr. Scott's right to an impartial judge will be violated if he is forced to appear in the City Court on July 25, 2016. The City Court's unconstitutional funding structure creates an appearance that Defendant Black cannot impartially adjudicate whether Mr. Scott willfully failed to pay because Defendant Black has a financial interest in extorting money from him to pay for the City Court's continued operation.

### ii.   Plaintiff Ebony Roberts

68. Plaintiff Ebony Roberts appeared in front of Defendant Black on March 21, 2016, and pleaded guilty to speeding and driving without a license.

69. Defendant Black sentenced Ms. Roberts to pay a fine amount, plus costs on or before April 25, 2016, for speeding and for driving without a license. She later learned it was a total of about $367.50 in fines and court costs for the speeding ticket and $262.50 in fines and court costs for the ticket for driving without a license.

70.   Ms. Roberts returned to the City Court on April 25, 2016, but did not have the money to pay her fines and court costs.  Defendant Black did not ask Ms. Roberts whether she was working or why she could not pay.  He did not offer her a payment plan or community service.  He told Ms. Roberts she had to pay the fines and costs or she would go to jail for not paying her traffic tickets.

71.   After Ms. Roberts paid the $50, she was ordered to return to the City Court on June 13, 2016, to pay the fines and court costs on her two traffic tickets.

72.   Ms. Roberts returned to the City Court on June 13, 2016, and paid $262.50 on her ticket for driving without a license after borrowing the money from her family.  However, she did not have the money to pay her fine or court costs on the speeding ticket.  Defendant Black did not give Ms. Roberts an opportunity to tell him that she did not have any money and was just trying to do her best to take care of her two-year-old daughter.

73.   Before Ms. Roberts could say anything, Defendant Black told her "this was [her] last extension."  A court employee then escorted her out of the courtroom to pay an additional $50.  There were so many people standing in line to pay the extension fee that there were even a couple of people that could not fit in the courthouse and had to stand outside.

74.   After Ms. Roberts told a court employee that she could not pay $50, he told Ms. Roberts that she could not leave the City Court and would go to jail if she did not pay the money.  He ordered Ms. Roberts to go back into the courtroom where several other people were also facing arrest for non-payment.

75.   Ms. Roberts's boyfriend left the City Court to get $50 as fast as he could to purchase Ms. Roberts's freedom.  She now has until July 25, 2016, to pay the $367.50 she owes the City Court or she will go to jail for not paying her traffic ticket.

76.     Ms. Roberts faces an imminent threat that she will be jailed because she cannot afford to pay the $367.50 that she owes the City Court on or before July 25, 2016.

77.     Ms. Roberts's right to an impartial judge will be violated if she is forced to appear in the City Court on July 25, 2016.  The City Court's unconstitutional funding structure creates an appearance that Defendant Black cannot impartially adjudicate whether Ms. Roberts willfully failed to pay because Defendant Black has a financial interest in extorting money from her to pay for the City Court's continued operation.

F.     **Plaintiffs Latasha Cook and Robert Levi Paid an Illegal $50 Extension Fee in Their Criminal Cases before a Judge with an Unconstitutional Conflict of Interest.**

i.     **Plaintiff Latasha Cook**

78.     Plaintiff Cook appeared in front of Defendant Black on June 1, 2015 and pleaded guilty to disturbing the peace.

79.     Defendant Black sentenced Ms. Cook to a suspended sentence of 90 days in jail with the condition that she pay a $300 fine plus court costs and complete substance abuse treatment.

80.     Ms. Cook returned to the City Court on July 13, 2015, but did not have the money to pay the fine and court costs because she was unemployed and her only source of income at the time was the disability check she received each month.

81.     Defendant Black did not ask Ms. Cook why she did not have the money to pay her fine and court costs.  Instead, Ms. Cook paid the City Court the $50 extension fee to receive additional time to pay the fine and court costs.

82.     Ms. Cook has previously gone to jail because she did not have the money to pay her fine and court costs.  Judge Black asked Ms. Cook on that date whether she had $50 to pay

for a new court date.  Because she did not have $50 in her pocket, a marshal handcuffed Ms. Cook and booked her into the City jail.

> ### ii.    Plaintiff Robert Levi

83.    Plaintiff Levi appeared in front of Defendant Black in November 2015 and pleaded guilty to running a stop sign and driving with expired insurance.

84.    Defendant Black sentenced Mr. Levi to pay a $100 fine plus court costs and 30 days default time for driving with expired insurance and a $50 fine plus court costs and 15 days default time for running a stop sign.

85.    Mr. Levi returned to the City Court in January 2016, but did not have the money to pay his fine and court costs.  Judge Black did not ask him why he did not have the money at his January 2016 court date.  Instead, Mr. Levi observed two people arrested for not paying fines and court costs.  Mr. Levi was scared that he would go to jail, too, because he did not have the money to pay his traffic tickets.

86.    Mr. Levi overheard a city court employee tell a woman that she could pay an additional $50 for an extension of time to pay instead of going to jail.

87.    Mr. Levi agreed to pay $50 in addition to his fine and court costs because he realized he would go to jail if he did not pay it.  He had planned to use that money to pay for other bills that day, which he was late paying after giving the money to the City Court.

88.    Mr. Levi returned to the City Court in March 2016 to pay his fine and court costs, but was $40 short of the amount he owed.  He asked a city court employee outside of the courtroom whether he could make a partial payment.  The city court employee told him that Judge Black "does not take partial payments" and that he "better call somebody!" because Judge Black is "gonna lock you up!" if he did not come up with the remaining $40.

89.     Mr. Levi borrowed the outstanding $40 from a friend and paid his traffic tickets in full to avoid going to jail.

## V.       CLASS ALLEGATIONS

90.     Plaintiffs seek to certify a Class and Subclass for equitable relief, and a separate Class for damages.

91.     Plaintiffs Roberts and Scott seek class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(2), related to Claim One only.  This class is defined as: All individuals who will appear in the Bogalusa City Court for criminal cases or who have unpaid fines and costs assessed by and owed to the City Court.  This class is referred to as the "Structural Bias Equitable Class."

92.     Plaintiffs Roberts and Scott seek certification of a Subclass pursuant to Fed. R. Civ. P. 23(a) and (b)(2), related to Claims Two, Three, Four and Six only.  This subclass is defined as: All individuals who were or will be adjudicated guilty in the Bogalusa City Court, who have been or will be given a future date by which to return to City Court, and who have not paid the assessed fines and costs in full prior to returning to City Court.  This Subclass is referred to as the "Pay Date Equitable Subclass."  All members of the Pay Date Equitable Subclass are also members of the Structural Bias Equitable Class.

93.     Plaintiffs Roberts, Scott, Cook, and Levi seek class certification pursuant Fed. R. Civ. P. 23(a) and (b)(3), related to Claim Five only.  This class is defined as: Any individual that paid an extension fee between June 22, 2015 and the present.  This class is referred to as the "Extension Fee Damages Class."

94.     Rule 23(a)(1), Impracticability of Joinder: The precise size of the classes and subclass are unknown by Plaintiffs but is substantial.  The Structural Bias Equitable Class is forward-looking and consists of persons appearing in approximately 3,000 criminal traffic and

misdemeanor cases filed in the Bogalusa City Court per year.  The Pay Date Equitable Subclass is forward-looking and consists of persons who may be subjected to paying an illegal extension fee or being put in jail for non-payment; in the past year this occurred to more than 40 persons. The Extension Fee Damages Class consists of persons who paid the extension fee in the last year, which occurred at least 100 times.  Many classes and most subclasses are comprised of low-income individuals who will likely lack independent resources to bring an independent action or to be joined in this action.  Joinder of every member of the class and the subclass would be impracticable.

95.     Rule 23(a)(2), Commonality: Plaintiffs raise claims based on questions of law and fact that are common to, and typical of, the putative class members they seek to represent.

a.     Questions of law and fact common to the Structural Bias Equitable Class include:

i.     Whether the City Court has a policy of assessing either $30 or $29.50 in court costs according to a fee schedule;

ii.     Whether court costs are imposed when individuals in the City Court are adjudicated guilty but not when they are adjudicated not guilty;

iii.     Whether Defendant Black conducts an inquiry into abilty to pay before ordering an individual to jail for non-payment of fines and court costs;

iv.     Whether judicial expense funds are used to pay for the City Court's operating and other expenses;

v.     What percentage of the City Court's total budget is derived from judicial expense funds;

vi.     Whether Defendant Black has control over the allocation of

judicial expense funds in his executive capacity for the City Court;

      vii.    Whether court costs, extension fees, and contempt fees are deposited into the judicial expense account;

      viii.    Whether the City Court created a $50 "extension fee;"

      ix.    Whether the City Court permitted Defendant Black to offer to some defendants the option of paying a $50 extension fee to buy their freedom and additional time to pay their monetary penalties;

      x.    Whether Defendant Black has a policy or practice of sentencing an individual to serve 15 days in jail or to pay a $250 contempt fee if the individual fails to appear to pay her fines and court costs;

      xi.    Whether the City Court's funding structure creates a structural conflict of interest that violates due process; and

      xii.    Whether injunctive and declaratory relief is appropriate and if so, what the terms of such relief should be.

    b.    Questions of law and fact common to the Pay Date Equitable Subclass include:

      i.    Whether Defendant Black appoints counsel at pay date proceedings or provides alternative safeguards;

      ii.    Whether Defendant Black assesses a person's ability to pay prior to their jailing for non-payment;

      iii.    Whether Defendant Black assesses alternatives to incarceration prior to jailing persons for non-payment who were unable to pay;

      iv.    Whether the City Court has a policy or practice of authorizing

Defendant Black to offer to some defendants the option of paying a $50 extension fee to buy their freedom and additional time to pay their monetary penalties;

v.      Whether Defendant Black assesses a person's ability to pay prior to offering a $50 extension fee to some people during pay dates;

vi.      Whether it is lawful for Defendant Black to order individuals to jail for non-payment of fines and court costs without inquiring into, and making factual findings about, an individual's ability to pay;

vii.      Whether it is lawful for Defendant Black to threaten incarceration but to permit individuals to pay a $50 extension fee to stay out of jail;

viii.      Whether it is lawful for Defendant Black to order individuals to jail for non-payment of fines and court costs without providing counsel at the time of jailing, and without providing any sort of notice regarding the purpose of the pay date hearing in advance of said hearing or other procedural safeguards; and

ix.      Whether injunctive and declaratory relief is appropriate and if so, what the terms of such relief should be.

c.      Questions of law and fact common to the Extension Fee Damages Class include:

i.      Whether court costs, extension fees, and contempt fees are deposited into the judicial expense account;

ii.      Whether the City Court created a $50 "extension fee;"

iii.      Whether the City Court permits Defendant Black to offer to some individuals the option of paying a $50 extension fee to buy their freedom and additional time to pay their monetary penalties;

iv.     Whether any state law authorizes the City Court to charge individuals an extension fee in order to receive additional time to pay fines and court costs;

v.      Whether due process permits offering a choice between paying an unauthorized extension fee or going to jail for non-payment; and

vi.     Whether damages are appropriate and if so, what the terms of such relief should be.

96.     Rule 23(a)(3), Typicality: The claims of Plaintiffs Roberts, Scott, Cook, and Levi are typical of those asserted on behalf of the proposed classes and subclass.  The injuries of Plaintiffs Roberts, Scott, Cook, and Levi all arise out of Defendants' policies, practices, and customs.

97.     Rule 23(a)(4), Adequacy: Plaintiffs Roberts, Scott, Cook, and Levi will fairly and adequately protect the interests of the proposed classes and subclass.  Plaintiffs are represented by attorneys from the Southern Poverty Law Center, who have experience in class-action litigation involving civil rights law, as well as experience litigating policies and practices in municipal courts that are unconstitutional.  Counsel has the resources, expertise and experience to prosecute this action.  Counsel knows of no conflict among members of the proposed class.

98.     Rule 23(b)(2): Defendant Black has acted on grounds generally applicable to the Structural Bias Equitable Class and Pay Date Equitable Subclass, making declaratory and injunctive relief with respect to the class and subclass as a whole appropriate and necessary.

99.     Rule 23(b)(3): The common questions of fact and law predominate over the questions of law and fact affecting individual members of the Extension Fee Damages Class, and a class action is a superior method to adjudicate these claims, making it appropriate to decide the damages claims through the class mechanism.  Particularly, the factual and legal questions

surrounding the general policies and practices of the City Court apply equally to all members of the Damages Class.  Furthermore, class members have little ability to pursue these claims individually, and it would be in the interest of judicial economy to adjudicate the constitutionality of the City Court's policies and practices in one proceeding.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Fourteenth Amendment to the U.S. Constitution**
**(Structural Conflict of Interest – Due Process)**
*Plaintiffs Roberts, Scott, and the Structural Bias Equitable Class versus*
*Defendant Black in His Individual and Official Capacities*

100.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

101.    The Due Process Clause requires Defendant Black to impartially adjudicate cases as well as maintain the appearance of impartiality.

102.    Defendant Black exercises judicial functions when presiding over cases in the City Court and executive functions over the City Court's finances and collection practices.

103.    Defendant Black, in his administrative and executive role, has the duty to create a budget and to raise money to pay for the City Court's operating expenses, and he has the ultimate discretion and control over spending court costs, extension fees, and contempt fees deposited into the judicial expense account.

104.    Defendant Black, in his executive and administrative role, and as the final policymaker for the City Court, established a policy, practice, or custom of creating a budget that relies on judicial expense funds to make up a substantial part of the City Court's budget.  This policy, practice, or custom is the moving force behind the violations of Plaintiffs' constitutional rights.

105.   The manner in which the City Court is funded creates a structural conflict of interest between Defendant Black's duty to impartially adjudicate cases and his executive responsibility to raise money to pay for the City Court's operating expenses, in violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

106.   There is an on-going controversy between Plaintiffs Roberts and Scott and Defendant Black.  Plaintiffs are scheduled to appear in the City Court in the future, and will appear before a judge with a structural conflict of interest.  The City Court's funding structure creates an appearance that Defendant Black cannot impartially adjudicate whether Plaintiffs Roberts and Scott willfully failed to pay because Defendant Black has a financial interest in extorting money from them to pay for the City Court's continued operation.

107.   Accordingly, pursuant to 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 1983, Plaintiffs Roberts and Scott, on behalf of themselves and the Structural Bias Equitable Class, seek a declaration and injunction against Defendant Black in his individual and official capacities to prevent future injury resulting from the conflict of interest created by Defendant Black acting under color of law in his individual and official capacities.

### SECOND CLAIM FOR RELIEF
**Fourteenth Amendment to the U.S. Constitution**
**(*Bearden* Violation — Due Process and Equal Protection)**
*Plaintiffs Roberts, Scott, and the Pay Date Equitable Subclass versus*
*Defendant Black in His Individual and Official Capacities*

108.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

109.   The Fourteenth Amendment's Due Process and Equal Protection Clauses prohibit incarcerating individuals for nonpayment without first determining that they willfully refused to make a monetary payment.

110.    There is an on-going controversy between Plaintiffs Roberts and Scott and Defendant Black.  Plaintiffs are scheduled to appear in the City Court in the future and will likely be unable to pay their monetary penalties.  Pursuant to his practice, Defendant Black will likely fail to make an inquiry into Plaintiffs' ability to pay before sentencing them to jail for non-payment.

111.    Plaintiffs Roberts and Scott, as well as those similarly situated, will be subject to confinement and other imminent injury in the future if Defendant Black's policies, practices, and customs are not declared to be unconstitutional.

112.    Declaratory relief is likely unavailable because Plaintiffs Roberts and Scott are required to appear in the City Court on July 25, 2016.  There will likely not be sufficient time before their July 25, 2016 hearing for this Court to reach a final determination on Plaintiffs' declaratory judgment claim.  As such, Plaintiffs Roberts and Scott, as well as those similarly situated, alternatively seek a preliminary injunction to protect them from the injuries that will be caused by Defendant Black's unconstitutional policies, practices, and customs.

113.    Accordingly, pursuant to 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 1983, Plaintiffs Roberts and Scott, on behalf of themselves and the Pay Date Equitable Subclass, seek a declaration, or if unavailable, a preliminary injunction, to prevent future injury caused by Defendant Black acting under color of state law in his individual and official capacities.

### THIRD CLAIM FOR RELIEF
**Fourteenth Amendment to the U.S. Constitution**
**(Right to Counsel – Due Process)**
*Plaintiffs Roberts, Scott, and the Pay Date Equitable Subclass versus*
*Defendant Black in His Individual and Official Capacities*

114.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

115.   There is an on-going controversy between Plaintiffs Roberts and Scott and Defendant Black.  Plaintiffs are scheduled to appear in the City Court in the future, and will likely be unable to pay their monetary penalties.  Pursuant to his practice, Defendant Black will likely fail to appoint counsel or provide alternative safeguards before requiring them to pay an illegal $50 extension fee or ordering them to jail for non-payment. Defendant Black also will not provide notice to Plaintiffs that their ability to pay will be a critical issue in these proceedings.

116.   The practices described in the previous paragraph constitutes a violation of the Fourteenth Amendment's Due Process Clause.

117.   Plaintiffs Roberts and Scott, as well as those similarly situated, will be subject to payment of an illegal fee, confinement, and other imminent injury in the future if Defendant Black's policies, practices, and customs are not declared to be unconstitutional.

118.   Pursuant to 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 1983, Plaintiffs Roberts and Scott, on behalf of themselves and the Pay Date Equitable Subclass, seek a declaration to prevent future injury caused by Defendant Black acting under color of state law in his individual and official capacities.

**FOURTH CLAIM FOR RELIEF**
**Fourteenth Amendment to the U.S. Constitution**
**(Substantive Due Process)**
*Plaintiffs Roberts, Scott, and the Pay Date Equitable Subclass*
*versus Defendant Black in His Individual and Official Capacities*

119.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

120.   The Fourteenth Amendment prohibits the government from depriving someone of liberty or property in an arbitrary or capricious manner.

121.   Defendant Black, in his executive and administrative role, and as the final

policymaker for the City Court, established a policy, practice, or custom of creating an "extension fee" that persons could pay in order to avoid going to jail. This policy, practice, or custom is the moving force behind the violations of Plaintiffs' constitutional rights.

122. Defendant Black's policies, practices, customs, acts, and omissions risk conditioning Plaintiffs Roberts' and Scott's liberty on paying an illegal extension fee to the City Court's judicial expense account.

123. Conditioning an individual's liberty on the payment of the extension fee is arbitrary and capricious because there is no statutory or other authority for the extension fee, in violation of the Due Process Clause of the Fourteenth Amendment.

124. There is an on-going controversy between Plaintiffs Roberts and Scott and Defendant Black. Plaintiffs are scheduled to appear in the City Court in the future, and will likely be unable to pay their monetary penalties. Pursuant to his practice, Defendant Black will likely order Plaintiffs to jail for non-payment if they fail to pay the $50 extension fee.

125. Plaintiffs Roberts and Scott, and those similarly situated, will be subject to confinement and imminent injury if Defendants' policies, practices, and customs are not declared to be unconstitutional.

126. Plaintiffs Roberts and Scott, on behalf of themselves and the Pay Date Equitable Subclass bring this claim pursuant to 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 1983 for actions taken by Defendant Black under color of state law and seek a declaration against Defendant Black in his individual and official capacities to prevent future injury.

## FIFTH CLAIM FOR RELIEF
### Fourteenth Amendment to the U.S. Constitution
### (Extension Fee — Procedural Due Process)
*Plaintiffs Roberts, Scott, Cook, Levi, and the Extension Fee Damages Class versus*
*Defendants Bogalusa City Court and Defendant Black in his Official Capacity*

127.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

128.    Defendant Black, in his executive and administrative role, and as the final policymaker for the City Court, established a policy, practice, or custom of creating an "extension fee" that persons could pay in order to avoid going to jail.  This policy, practice, or custom is the moving force behind the violations of Plaintiffs' constitutional rights.

129.    Defendant Black, in his judicial capacity, utilizes this policy, practice, or custom to deprive individuals of their property in a manner not authorized by state law by having them pay a $50 extension fee to Defendant City Court to avoid going to jail for non-payment of their monetary penalties.

130.    Plaintiffs Roberts, Scott, Cook, and Levi and the proposed Extension Fee Damages Class have paid the extension fee to the City Court.

131.    Plaintiffs Roberts, Scott, Cook, and Levi and the proposed Extension Fee Damages Class have a property interest in the extension fee they paid to the City Court.

132.    Defendants deprived Plaintiffs of their property in a manner not authorized by state law by having them pay a $50 extension fee to avoid going to jail for non-payment of their monetary penalties.

133.    Plaintiffs Roberts, Scott, Cook, and Levi, on behalf of themselves and the Extension Fee Damages Class, bring this claim pursuant to 42 U.S.C. § 1983 for actions taken by Defendant Black under color of state law and seek an award of damages for their injuries from

Defendant Bogalusa City Court and Defendant Black, sued in his official capacity, by charging Plaintiffs the illegal extension fee.

<u>SIXTH CLAIM FOR RELIEF</u>
**Fourteenth Amendment to the U.S. Constitution**
**(Extension Fee — Procedural Due Process)**
*Plaintiffs Roberts, Scott, and the Pay Date Equitable Subclass versus*
*Defendant Black in his Individual and Official Capacities*

134.    Plaintiffs re–allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

135.    Defendant Black, in his executive and administrative role, and as the final policymaker for the City Court, established a policy, practice, or custom of creating an "extension fee" that persons could pay in order to avoid going to jail.  This policy, practice, or custom is the moving force behind the violations of Plaintiffs' constitutional rights.

136.    Defendant Black, in his judicial capacity, utilizes this policy, practice, or custom to deprive individuals of their property in a manner not authorized by state law by having them pay a $50 extension fee to Defendant City Court to avoid going to jail for non-payment of their monetary penalties.

137.    There is an on-going controversy between Plaintiffs Roberts and Scott and members of the Pay Date Equitable Subclass and Defendant Black.  Plaintiffs are scheduled to appear in the City Court in the future and will likely be unable to pay their monetary penalties. Pursuant to the City Court's practice, Defendant Black is authorized to and likely will offer Plaintiffs and the Subclass a false choice: either pay the illegal $50 extension fee or go to jail.

138.    Plaintiffs Roberts and Scott have a property interest in the $50 extension fee they will be asked to pay pursuant to the Bogalusa City Court policy.

139.    Plaintiffs Roberts and Scott, as well as those similarly situated, will be subject to

payment of an illegal fee, in the future if Defendant's policies, practices, and customs are not declared to be unconstitutional.

140.    Pursuant to 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 1983, Plaintiffs Roberts and Scott, on behalf of themselves and the Pay Date Equitable Subclass, seek a declaration and an injunction, to prevent future injury caused by Defendant Black acting under color of state law in his individual and official capacities.

## VII.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs request the following relief:

a.    Assume jurisdiction over this action;

b.    Certification of a class, referred to above as the Structural Bias Equitable Class, under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, represented by Plaintiffs Roberts and Scott, related to Claim One;

c.    Certification of a subclass, referred to above as the Pay Date Equitable Subclass, under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, represented by Plaintiffs Roberts and Scott, related to Claims Two, Three, Four, and Six;

d.    Certification of a class, referred to above as the Extension Fee Damages Class, under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, represented by Plaintiffs Roberts, Scott, Cook, and Levi, related to Claim Five;

e.    Declaratory and injunctive relief;

f.    Compensatory damages;

g.    An award of prevailing party costs, including attorney fees, for Counts One, Four, Five and Six; and

h.    Such other relief as the Court deems just and appropriate.

DATED this 21st day of June, 2016.          Respectfully submitted,

 /s/ Ivy Wang
Ivy Wang
*On Behalf of Plaintiffs' Counsel*

Ivy Wang
SOUTHERN POVERTY LAW CENTER
1055 St. Charles Avenue, Suite 505
New Orleans, Louisiana 70130
P: 504-228-7279
F: 504-486-8947
E: ivy.wang@splcenter.org

Micah West*
Samuel Brooke*
Emily Early*
Sara Zampierin*
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama  36104
P: 334-956-8200
F: 334-956-8481
E: micah.west@splcenter.org
E: samuel.brooke@splcenter.org
E: emily.early@splcenter.org
E: sara.zampierin@splcenter.org

*application for pro hac vice pending*

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that arrangements have been made to, on this date, deliver a true and correct copy of the foregoing by hand delivery to the following parties, at the below addresses:

Robert J. Black
302 Louisiana Ave
Bogalusa LA, 70427

Bogalusa City Court
c/o Tonia DeLeon, Clerk of Court
202 Arkansas Ave
Bogalusa, LA, 70427

Formal proof of service will be filed with the Court when completed.

I further certify that arrangements have been made to, on this date, deliver a true and correct courtesy copy of the foregoing to the City Attorney for Bogalusa and the Attorney General at the below addresses:

Jeff Landry, Attorney General
Office of the Attorney General
P.O Box 94005
Baton Rouge, LA 70804

Dale Edgar Branch, Bogalusa City Attorney
1743 Goodyear Dr
Bogalusa LA, 70427-4020
debranch@bellsouth.net

DATED this 21st day of June, 2016.          /s/ Ivy Wang                              
                                            Ivy Wang