**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| LATASHA COOK, ROBERT LEVI, EBONY ROBERTS, ROZZIE SCOTT, RICHARD BOLGIANO, BENNY GRAHAM, JAMES LORIO, BRADLEY MOSES, and MARISA PAM, on behalf of themselves and those similarly situated, | Case No. 2:16-cv-11024-ILRL-MBN Section "B"(5) |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| v. | **CLASS ACTION** |
| ROBERT J. BLACK, in his individual and official capacities, and BOGALUSA CITY COURT, | |
| Defendants. | |

## I.     PRELIMINARY STATEMENT

1.     Defendants Judge Robert J. Black ("Black") and the Bogalusa City Court ("City Court") operate a modern-day debtors' prison, jailing the poor for their failure to pay. Defendant Black routinely orders individuals to jail for non-payment of monetary penalties for minor traffic and misdemeanor offenses without inquiring into the reason for non-payment and imposes overly burdensome alternative sentences under the threat of jail that are impossible for many to satisfy.

2.     The City Court is funded off the backs of the poor. It substantially relies on the court costs and fees it collects from criminal defendants. The City Court routinely covers at least 15% of its expenditures through income it generates from criminal defendants. Without this money, the City Court could not function. This structural conflict of interest creates an incentive for Defendant Black to find individuals guilty, to impose the maximum statutory court costs (and to fail to waive those costs if an individual is unable to pay), and to either jail a person for failing

to pay without making an inquiry into their ability to pay, or to convert the fines and costs into unreasonable community service requirements without considering the person's ability to satisfy those requirements within the time allotted.

3.     This incentive is exemplified through Defendant Black's creation of a $50 "extension fee," and later a $25 community service "enrollment fee," to raise additional money to operate the City Court.  These fees are not authorized by state law.

4.     On June 21, 2016, Plaintiffs Rozzie Scott ("Scott"), Ebony Roberts ("Roberts"), Latasha Cook ("Cook"), and Robert Levi ("Levi") filed a lawsuit against Defendant Black alleging that Defendant Black operates a modern day debtors' prison and cannot maintain the appearance of impartiality because the City Court substantially relies on court costs and fees to fund its operations.  Shortly thereafter, the Parties agreed to several temporary stipulations (the "Agreements") in which Defendant Black agreed not to jail people for non-payment of fines, costs, or contempt fees, and would not assess or collect any court costs authorized by  La. Stat. Ann. § 13:1899 or extension or contempt fees that are retained by the City Court.

5.     Before the Agreements, Defendant Black gave individuals unable to pay their monetary penalties in full a false choice: they could either go to jail for non-payment of fines and costs or pay this illegal $50 extension fee to buy additional time to pay their monetary penalty.

6.     Plaintiffs Scott, Roberts, Cook, and Levi were previously victimized by this funding system and were forced to accept the false choice of paying the illegal $50 extension fee to avoid being jailed.  Each of these Plaintiffs paid the City Court $50 to purchase their freedom. Hundreds of other people either went to jail or were forced to make this payment.

7.     Since the Parties entered into the Agreements, Defendant Black has started ordering defendants who are unable to pay their fines and court costs to perform community

service, under the threat of jail if they fail to satisfy the order.  There is only one community service option: picking up trash at the Bogalusa City Jail once per week on Saturday mornings. Those who cannot pay or perform the community service—because of physical or mental disability or because of scheduling conflicts due to work or childcare—are told that the alternative is jail.

8.      The Agreements will expire on February 17, 2017, and there is a reasonable expectation Defendant Black will again require individuals to pay illegal fees, jail them for non-payment without regard to indigency, and incarcerate those who cannot perform the community service.  There is no evidence that Defendants will abandon the unconstitutional policies, practices, and procedures they employed before the Agreements.

9.      Plaintiffs Richard Bolgiano ("Bolgiano"), Benny Graham ("Graham"), James Lorio ("Lorio"), Bradley Moses ("Moses"), and Marisa Pam ("Pam") fear they will be incarcerated for non-payment, forced to make an illegal payment, required to perform unreasonable community service under the threat of jail, and deprived of due process by having their cases decided by a biased judge at their upcoming court hearings.  Plaintiffs do not have the ability to pay the hundreds of dollars in fines and costs they owe the City Court or the ability to perform the community service that has been or will be imposed under the threat of jail.

10.     Defendants' unconstitutional practices have affected, and will continue to affect, hundreds of low-income people with citations for traffic tickets or misdemeanor violations in the City of Bogalusa, Louisiana.  Plaintiffs bring these claims on behalf of themselves and all others similarly situated to seek a declaration that Defendants' practices are unconstitutional, to seek an injunction to enjoin them from continuing these practices, and to seek damages to recover the illegal extension fee for those who paid it in the past year.

## II.        JURISDICTION AND VENUE

11.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

## III.        PARTIES

**A.        Plaintiffs**

13.     Plaintiff Latasha Cook is a resident of Bogalusa, Louisiana.

14.     Plaintiff Robert Levi is a resident of Bogalusa, Louisiana.

15.     Plaintiff Ebony Roberts is a resident of Bogalusa, Louisiana.

16.     Plaintiff Rozzie Scott is a resident of Bogalusa, Louisiana.

17.     Plaintiff Richard Bolgiano is a resident of Bogalusa, Louisiana.

18.     Plaintiff Benny Graham is a resident of Hattiesburg, Mississippi.

19.     Plaintiff James Lorio is a resident of Bogalusa, Louisiana.

20.     Plaintiff Robert Moses is a resident of Bogalusa, Louisiana.

21.     Plaintiff Marisa Pam is a resident of Bogalusa, Louisiana.

**B.        Defendants**

22.     Defendant Robert J. Black is the sole judge who sits on the Bogalusa City Court in Bogalusa, Louisiana.  He is sued in his individual and official capacities.

23.     Defendant Bogalusa City Court is a government entity located in Bogalusa, Louisiana.

## IV.        STATEMENT OF FACTS

### A.        Defendant Black Oversees and Administers the Bogalusa City Court.

24.        Bogalusa is a town of about 12,000 people located in Washington Parish, Louisiana, approximately 1.5 hours north of New Orleans, Louisiana.  The town's economy centers on the lumber and paper mills.  Nearly 36% of the population in Bogalusa lives below the poverty line.  The median household income was $25,036 in 2015, less than half of the median household income in the United States.

25.        The City Court is authorized to hear cases involving city ordinance violations, including traffic tickets and misdemeanors, which are committed within Ward Four of Washington Parish.  Defendant Black is the only judge who sits on the City Court.

26.        Defendant Black is elected to his position as judge of the City Court.

27.        Defendant Black is authorized to appoint and remove clerks and deputy clerks for the City Court.

28.        Defendant Black possesses administrative, executive, and judicial powers over the City Court.  In his administrative capacity, Defendant Black is responsible for the orderly administration of the City Court.  In his executive capacity, Defendant Black is responsible for the City Court's finances, including creating a budget for the City Court and ensuring the City Court has sufficient funds to pay employee salaries and the City Court's overhead expenses.  Finally, in his judicial capacity, Defendant Black is responsible for impartially adjudicating municipal and misdemeanor cases before the City Court.

29.        Defendant Black is authorized to create policies and rules for the conduct of judicial business before the City Court.  This power includes practices with regard to the City Court's collection of fines and court costs.

**B.** **The Bogalusa City Court Systematically Jails and Threatens to Jail Individuals Who Cannot Pay Fines and Court Costs that Fund the City Court or Converts Those Fines and Court Costs into Unreasonable Community Service Requirements Ordered Under the Threat of Incarceration.**

30.     The Bogalusa City Court typically conducts criminal proceedings once per week, on Monday mornings and afternoons.

31.     On behalf of the City Court, Defendant Black imposes a suspended jail sentence for individuals who plead guilty or are found guilty after trial and are given a sentence of fines and costs only, with the jail sentence to be activated if the individual fails to pay.  *See* La. C. Cr. P. Art. 884.  This suspended jail sentence is commonly referred to as "default time."

32.     Defendant Black does not conduct an indigency determination before imposing default time or inquire into whether an individual has the resources to pay a fine and court costs.

33.     Defendant Black also imposes "default time" when ordering individuals to complete community service.

34.     If an individual cannot pay the fine and court costs in full on the sentencing date, Defendant Black orders the individual to return to the City Court by the "pay date" or converts the fine and court costs to community service.  The pay date functions as the deadline by which Defendant Black expects the individual to pay the fines and court costs in full.

35.     The City Court does not accept partial payments, reduce fines and court costs to a civil judgment, or remit any fines for those who are unable to pay.  Any individual ordered to pay a fine and court costs must pay the fine and court costs in full or complete the ordered community service.

36.     Neither Defendant Black nor anyone acting on behalf of the City Court provides or appoints counsel to persons appearing at pay date proceedings.

37.    Neither Defendant Black nor anyone acting on behalf of the City Court provides notice before the pay date proceedings that the person's ability to pay will be a critical issue at the hearing if they are unable to pay, or provides the individual during or before the hearing with a form (or its equivalent) designed to elicit information about the individual's financial circumstances.

### 1.    Practices Before the Parties' Agreements.

38.    Before the Parties' Agreements, *see supra para.* 4, Defendant Black did not inquire into the reasons for non-payment if an individual failed to pay the fines and court costs imposed or distinguish between those individuals who willfully refused to pay and those who could not pay due to their indigence.

39.    When a person appeared at a pay date and did not have the money to pay the monetary penalty, Defendant Black often allowed some individuals to pay a $50 "extension fee" to purchase their freedom and be permitted additional time to pay their monetary penalty.[1]

40.    Defendant Black instructed those who could not afford the $50 "extension fee" or who were not given that option to sit in seats at the front of the courtroom for the remainder of the court session.

41.    A City Court marshal generally allowed individuals to leave the courtroom to make phone calls to family and friends to try to arrange for payment while court remained in session.  A marshal escorted out of the courtroom those individuals permitted to make phone calls to arrange for payment.  The marshal stood by the individual while he or she attempted to contact family, friends, or co-workers to explain that he or she will be arrested and jailed if the

---

[1] This extension fee is described in greater detail at Paragraphs 89 through 99.

fines and court costs were not paid by the end of the court session.  If family, friends, or co-workers brought money to pay the fines and court costs to the courthouse before the end of the court session, the individual was allowed to pay and to leave.

42.     At the end of the court session, the marshal walked those who could not pay down the courthouse steps and to the jail in an adjacent building, and booked them into the City jail. Sometimes the marshal did this by handcuffing persons together.

43.     The City Court clerk's minute entries recorded when a person was sent to jail for non-payment, noting that the person had failed to pay and was ordered to serve time in jail or to remain in jail until a certain amount was paid.  To illustrate, in the sample minutes below, Defendant Black ordered an individual to either serve "50 days default time" or pay $575.00 for not having proof of insurance or a license plate:

```
                        City Court of Bogalusa, LA

              IN AND FOR WARD FOUR, WASHINGTON PARISH, LOUISIANA

                             COURTROOM MINUTES
                             ORI#

     Defendant:
     Date Of Birth
     2014838       S   06/07/2014 1341:53 D NO MVI/SWITCHED/ALTERED MVI
     2014837       C   06/07/2014 1341:53 D NO MVI/SWITCHED/ALTERED MVI
     2014836       C   06/07/2014 1341:51 NO LICENSE PLATE

     The City Court of Bogalusa convened this date pursuant to previous assignment:
     PRESENT: HON. ROBERT J. BLACK, JUDGE; THE DEFENDANT; HON.DAVID DUKE ADA/CITY
     PROSECUTOR; JOHN SUMRALL, MARSHAL and NIKKI S. BOONE, DEPUTY CLERK and
     REPORTER.


     The defendant having failed to pay the previously assessed fine/costs on the
     charge/charges
     the court found the defendant in contempt and sentenced the defendant to serve
     a period of 50 days default time or to pay $575.00
```

44.     Any individual arrested for non-payment could be released from jail if the fine and court costs were paid in full or if the individual served the default time.

45.     The City's jail logs document the amount of money an individual had to pay or the amount of time the individual had to serve to be released from jail.  In the example below, an

individual was ordered to serve 160 days in jail unless he paid a $724 "cash fine":



46.     If an individual failed to appear at the pay date, Defendant Black issued an attachment for the individual's arrest and ordered the individual to serve 15 days in jail or to pay a $250 cash bond.  In the sample below, Defendant Black sentenced an individual to a pay or stay sentence of "15 days" in jail or a "$250.00 contempt fee":



47.     Defendant Black sometimes announced in open court when issuing such attachments that a person that failed to appear to pay could "buy their way out of jail."

48.     Defendant Black's announcement that a person can "buy their way out of jail" is reflected in the jail logs.  In the example below, an individual paid a fine of $250 to "shorten [her] sentence of 15 days":



## 2. Practices After the Parties' Agreements.

49.    Since the Parties entered into the Agreements, Defendant Black still does not offer payment plans, remit any fines, or sign a civil judgment in the amount of the fines and costs to collect through civil process rather than by using criminal sanctions.  Instead, he has started requiring people who lack the money to pay their fines and court costs at the Pay Date to perform community service as an alternative to going to jail for non-payment.

50.    A person's sentence is satisfied and her case is closed if the community service is completed within the allotted timeframe, along with any other conditions of the sentence.

51.    Defendant Black, however, offers only one community service option: picking up trash at the Bogalusa Police Department.

52.    The amount of community service imposed varies from defendant to defendant and appears to be unrelated to the amount of the initial fine imposed.  There is no cap on the number of community service hours imposed.

53.    Additionally, a person can only satisfy any community service requirements one day per week on Saturday mornings, generally for a period of four or eight hours.  Individuals are not informed about the number of available community service hours in advance of the date that they are performed.

54.    Any person ordered to complete community service as an alternative to payment is given a summons to return to the City Court to "Pay Fines and Costs" and to provide "Proof of Completion of Community Service or Contempt Charge."   In the example below, Plaintiff Marisa Pam is required to return to the City Court on February 13, 2017 to show proof of 40 hours of community service or will be subject to a "contempt charge."

TO: MARISA  PAM,

residing in Fourth Ward of Washington Parish, Louisiana: You are hereby summoned to appear before the City Court of Bogalusa, Louisiana, held at the City Hall on the 02/13/2017 at 10:00 AM , there to testify in a certain case pending, styled same as above, on behalf of the (Plaintiff) - (Defendant).

Pay Fines and Costs

☑ Proof of Completion of Community Service or Contempt Charge 40hrs

☐ Restitution ☐ Drug Screen ☐ SACAY
☐ DIP ☑ Counseling ☑ Community Service
☐ $50 Probation Fee ☐ $40 Public Defender Fee ☐ $25 C/S Fee

55.     Defendant Black has continued to threaten some individuals verbally that they will go to jail if they do not complete the community service within the allotted timeframe.

56.     Defendant Black has also continued to impose fees that are not authorized under state law.  For example, he has charged some individuals a $25 community service "enrollment fee" to pick up trash at the Bogalusa Police Department, even though the $25 community service enrollment fee is not authorized under state law.

57.     Money collected from the $25 community service enrollment fee is deposited into the City Court's accounts.  The City Court's income statements reflect that Defendant Black has raised nearly $1,000 by charging defendants unable to pay fines and court costs this new, unauthorized fee:

CRIMINAL ACCOUNT-CITIZENS
INCOME STATEMENT
FOR THE TWELVE MONTHS ENDING DECEMBER 31, 2016

|  | Current Month |  | Year to Date |  |
|---|---|---|---|---|
| REVENUES |  |  |  |  |
| COMMUNITY SERVICE | 50.00 | 0.42 | 950.00 | 0.21 |

58.     Many City Court defendants cannot perform the community service due to disability, lack of transportation or childcare, or because they work on Saturdays.

59.     Moreover, the limited availability of the community service offered means that

many individuals who cannot afford to pay their fines and costs are in practice unable to access this alternative, even though they are capable of doing the work.

60.     Defendant Black tells many people who attempt to explain that they cannot pay the fine or perform the community service that the alternative is jail, and orders each defendant sentenced to community service to appear to show "proof of completion of community service" or face a "contempt charge."

61.     Additionally, Defendant Black has continued to enforce pay or stay sentences on anyone who fails to appear, even though the Parties' Agreements prohibit him from doing so.

62.     If a person returns to the City Court after failing to appear, Defendant Black holds the person in contempt and orders the person to pay $150 or serve 15 days in jail.[2]

63.     Defendant Black instructs those who do not have the $150 to sit in the front of the courtroom for the remainder of the court session and to await their arrest.

64.      A City Court marshal sometimes allows individuals to leave the courtroom to make phone calls to family and friends to try to arrange for payment of the $150 while court remains in session.  A marshal escorts out of the courtroom those individuals permitted to make phone calls to arrange for payment.  The marshal stands by the individual while he or she attempts to contact family, friends, or co-workers to explain that he or she will be arrested and jailed if the $150 contempt fee is not paid by the end of the court session.  If family, friends, or co-workers bring money to pay the $150 contempt fee to the courthouse before the end of the court session, the individual is allowed to pay and to leave.

65.      If an individual is arrested on a warrant for failure to appear, the police tell the

---

[2] While the stipulations are in place, this fee is $150 instead of $250 because Defendants have agreed not to assess the $100 that is credited to the City Court's judicial expense fund.

person that they must either pay $150 or serve 15 days in jail.  This amount is independent of the person's underlying criminal charge.  In the example below, the person had to pay $300 for failing to appear on two charges or serve 30 days in jail:

| | | | | |
|---|---|---|---|---|
| FREDRICK ▮▮▮▮ | DRIVER MUST BE LC. NO PROOF OF INS. 2 CTS. FTA | 30 DAYS OR $300.00 CASH FINE REL. 10/20/16 W/SUMMONS | 09/20/16 | |

66.     The City Court clerk's minute entries record when a person is sentenced to a pay or stay sentence after being arrested on a failure to appear warrant.  To illustrate, in the sample minutes below, an individual was sentenced to pay $150 or serve 15 days in jail:



```
CITY OF Bogalusa Vs. ▮▮▮▮▮▮▮;
COURTROOM MINUTES  Date :10/31/2016    Time :10:02AM
--------------------------------------------------------
  The City Court of Bogalusa convened this date pursuant to the previous
  assignment: Present: Hon. ROBERT J. BLACK Judge; Hon. THEO JONES  Public
  Defender; The Defendant; Hon DAVID DUKE CITY PROSECUTOR/ADA; John Sumrall,
  Marshal and NIKKI S. WHEAT, Deputy Clerk and Reporter.

  Defendant appeared on this date for disposition on an Attachment issued for
  failure to appear, whereupon the Court found the defendant in contempt and was
  sentenced to $150.00 contempt fine  default 15 days in jail.PD
```

67.     Upon expiration of the Agreements, Defendant Black will no longer be prohibited from requiring individuals to pay the illegal extension fee, jailing defendants for non-payment without regard to indigency, incarcerating individuals who are unable to perform the community service, or creating new fees to fund the City Court that are unauthorized by state law.

C.     **The Bogalusa City Court Substantially Relies on Court Costs and Fees to Fund its Court Operations.**

68.     The State of Louisiana does not have a unified funding system for the State's courts and does not oversee the budgets of city courts.  Instead, as the Louisiana Supreme Court reported to the Legislature in 2014, self-generated and local funds—not state funds—represent the largest sources of revenue in the majority of courts.  As the Louisiana House of Representatives has noted, city courts are funded through the use of court costs and fees that are

imposed on those persons appearing before the City Court.

69.    The City Court's operating expenses are paid through four sources of revenue: the State of Louisiana, the Washington Parish Government, the City of Bogalusa, and the City Court itself through assessments of certain costs and fees.

70.    The funds the City of Bogalusa, Washington Parish, and the State of Louisiana provide for the City Court, however, are insufficient to cover the City Court's operating expenses.  The following table illustrates the City Court's total revenue from the City, Parish, and State ("Total Governmental Funding"); its total expenditures; its shortfall; and the shortfall as a percentage of total expenditures, for 2009 to 2015:

**Bogalusa City Court Governmental Revenues and Expenditures 2009-2015**

| Year | Total Governmental Funding | Total Expenditures | Shortfall | Shortfall as % of Expenditures |
|------|---------------------------|--------------------|-----------|-------------------------------|
| 2009 | $109,062 | $161,310 | $52,248 | 32.4% |
| 2010 | $120,509 | $176,171 | $55,662 | 31.6% |
| 2011 | $210,049 | $280,043 | $69,994 | 25% |
| 2012 | $212,910 | $293,024 | $80,114 | 27.3% |
| 2013 | $253,641 | $364,000 | $110,359 | 30.3% |
| 2014 | $280,357 | $386,934 | $106,577 | 27.5% |
| 2015 | $282,245 | $383,303 | $101,058 | 26.4% |

71.    The remainder of the City Court's operating expenses not funded by the contributions of the State, Parish, and City are funded through court costs and fees collected in criminal cases; court fees collected in civil cases; and reserves of these same fees collected in prior years.

72.    Defendant Black is authorized under multiple state statutes to assess a variety of court costs in criminal cases.  Although most of these court costs are disbursed to other entities, Defendant Black is also authorized to assess up to $30 under  La. Stat. Ann. § 13:1899 against every defendant who is found guilty or forfeits his bond.  This court cost is different than other

court costs because Defendant Black is authorized by state statute to keep and spend the money generated under La. Stat. Ann. § 13:1899 to support the City Court's operations.

73.     Defendant Black also retains $100 for the City Court's operating expenses after finding an individual in contempt and imposing monetary penalties.

74.     As the top official of the City Court, Defendant Black, in his administrative and executive capacity, has the sole discretion over how to spend the money generated under La. Stat. Ann. § 13:1899.

### 1. Practices Before the Parties' Agreement.

75.     Before the Agreements, in his administrative and executive capacity, Defendant Black established a practice of assessing $30 in some cases under La. Stat. Ann. § 13:1899 and $29.50 in other cases, depending on the charge.  He created and authorized a case costs schedule for the City Court that reflected whether to charge $30 or $29.50 based on the charge.

76.     When imposing a monetary penalty, Defendant Black specified a specific fine amount and then refers generally to "costs."  The specific amount of costs is later assessed by a court employee based on the schedule.

77.     In his administrative and executive capacity, Defendant Black also established a practice of assessing a $250 contempt fine and costs if a person failed to appear and ordered the Clerk of Court to retain $100 of that amount to pay for the City Court's operating expenses.

78.     In his administrative and executive capacities for the City Court, Defendant Black ordered the Clerk of Court to create a "judicial expense" account for the City Court and instructed the clerks to deposit the statutory court costs under La. Stat. Ann. § 13:1899 into that account.  In addition to these costs, the judicial expense account consisted of money collected from extension fees and contempt fees.  No other sources funded the City Court's judicial

expense account.

79.     Costs assessed against City Court criminal defendants comprised a substantial portion of the City Court's yearly operating budget.  For example, the City Court generated nearly $57,000 for its "judicial expense" account in 2014 through court costs assessed under La. Stat. Ann. § 13:1899, extension fees, and contempt fees for non-payment—an amount that represented  approximately 15% of the City Court's operating budget.  In 2015, the City Court generated even more court-controlled revenue—at least $64,000 in judicial expense funds from court costs and fees and at least $5,000 in extension fees—an amount that represented about 18% of the City Court's revenues and expenditures in its proposed operating budget.

80.     Defendant Black controlled the judicial expense account in his executive and administrative capacity for the City Court and had sole discretion under state law to determine how those funds were allocated to pay for the City Court's operating expenses.

81.     The manner in which Defendants funded the City Court created a structural conflict of interest between Defendant Black's duty to impartially adjudicate cases and his executive responsibility to raise money to pay for the City Court's operating expenses.  The City Court could not have operated if Defendant Black did not find, or threaten to find, City Court defendants guilty or in contempt, and if he did not successfully collect court costs and fees from a substantial number of individuals who appeared before him.

### 2. Practices After the Parties' Agreement.

82.     Since the Parties entered into the Agreements, Defendant Black has not been collecting or assessing any court costs authorized by  La. Stat. Ann. § 13:1899, extension fees, or contempt fees that are retained by the City Court.

83.     However, neither the local governments nor the State of Louisiana have provided

the City Court supplemental funding to off-set this loss of money.  Instead, the City Court has been funding itself through its reserve funds from its judicial expense account to make up for the loss of income from City Court defendants.  As of December 31, 2015, the City Court had $52,262 in cash reserves in its judicial expense account.

84.     As noted *supra para.* 68-71, the City Court averages about a $100,000 budgetary shortfall from local and State funding sources each year.

85.     Six months have passed since the Parties entered into their Agreements.  Based upon information and belief, and the City Court's expenditures from previous years, the City Court will have spent about $50,000 of its cash reserves upon the expiration of the stipulations and nearly exhausted its reserves.

86.     Neither the State nor local governments have provided sufficient additional funds for 2017 to off-set the loss of monies generated from criminal defendants.

87.     The City Court will not have sufficient funds to operate unless it begins to assess judicial expense funds again upon the expiration of the Agreements.

88.     The City Court's funding structure creates a structural conflict of interest between Defendant Black's duty to impartially adjudicate cases and his executive responsibility to raise money to pay for the City Court's operating expenses.  The City Court will not be able to operate if Defendant Black does not find, or threaten to find, City Court defendants guilty or in contempt for failure to pay, appear, or complete community service,[3] and if he does not successfully collect court costs and fees from a substantial number of individuals who appear before him.

---

[3] The conflict of interest will exist even for those defendants who are facing contempt for failure to complete community service.  A person held in contempt is typically assessed a $250 fee, $100 of which is deposited into the City Court's judicial expense fund—or more than three times what the City Court can initially collect from a defendant in judicial expense funds.

D.     **The Bogalusa City Court Has Created Illegal Fees to Generate Additional Revenue.**

89.     Before the Parties' Agreements, Defendant Black created a $50 "extension fee" on behalf of the City Court in his executive and administrative capacities.  The money collected through this extension fee was used to pay for the operations of the City Court.

90.     The "extension fee" is not authorized by state law.

91.     City courts are not authorized to create new court costs and fees under state law; that authority is limited to the Louisiana State Legislature.

92.     Through the creation of this fee, the City Court authorized Defendant Black, acting in his judicial capacity, to offer a false choice to individuals who cannot pay fines and court costs by the pay date: either (a) pay the extension fee by the end of the court session (or in some cases, shortly after booking) and be granted additional time to pay the fines and court costs, or (b) go to jail until all fines and costs are paid or the underlying sentence is served.

93.     The $50 "extension fee" is not memorialized in an order because it was not actually ordered by Defendant Black.  Rather, it was treated by the City Court as an alternative collection method, to permit the person to pay more in order to have additional time to try to pay the monetary penalty.

94.     If a person was not able to pay the illegal $50 extension fee before the end of court, she was processed into the jail.  But if she obtained it shortly after being jailed, she may have been permitted to be released, as reflected in the jail records.  For example, in the below jail log excerpt, the person was jailed at 2:52pm and was released 19 minutes later, after paying the extension fee:



95.     The money collected as an extension fee was not credited toward an individual's fines or court costs.  Instead, it was treated as a separate and additional fee.

96.     In 2015, the City Court collected the extension fee from at least 100 individuals, netting at least $5,000 to pay for the City Court's operating expenses.

97.     Although the Agreements presently prohibit Defendant Black from assessing the extension fee, he will again be able to assess and collect it upon their expiration.

98.     Since the Agreements, Defendant Black has also created a $25 community service "enrollment fee" on behalf of the City Court in his executive and administrative capacities.  The money collected through this fee is retained by the City Court.

99.     Although the $25 community service "enrollment fee" is not authorized by state law, Defendant Black has started charging defendants this fee to pick up trash at the Bogalusa Police Department.

**E.      Plaintiffs Richard Bolgiano, Benny Graham, James Lorio, Bradley Moses, and Marisa Pam Face Unconstitutional Treatment at Upcoming Court Dates.**

**i.      Plaintiff Richard Bolgiano**

100.     Plaintiff Richard Bolgiano appeared in front of Defendant Black on December 12, 2016, and pleaded guilty to possession of marijuana and possession of drug paraphernalia.

101.     Defendant Black ordered Mr. Bolgiano to pay $433 in fines and costs on the possession of marijuana charge before February 13, 2017, and sentenced him to 15 days default time.  Defendant Black also ordered him to pay $243 in fines and costs before February 13, 2017, on the possession of drug paraphernalia charge and sentenced him to 15 days default time.

102.    Mr. Bolgiano faces an imminent threat that he will be jailed because he cannot afford to pay the $676 in total fines and costs that he owes the City Court.

103.    Mr. Bolgiano's right to an impartial judge will be violated if he is forced to appear in the City Court on February 13, 2017, and on any subsequent court date.  The City Court's unconstitutional funding structure creates an appearance that Defendant Black cannot impartially adjudicate whether Mr. Bolgiano willfully failed to pay or failed to comply with other court orders because Defendant Black has a financial interest in extorting money from him to pay for the City Court's continued operation.

### ii.    Plaintiff Bradley Moses

104.    Plaintiff Bradley Moses appeared in front of Defendant Black on October 31, 2016, and pleaded guilty to possession of marijuana, running a stop sign, improper lane usage, driving without a license, and contempt for failing to appear at a previous court date.

105.    Defendant Black ordered Mr. Moses to pay $150 in fines and costs for failing to appear with 15 days default time; $100 fine plus costs for possession of marijuana with 15 days default time, as well as 1 year of unsupervised probation; 16 hours of community service, with default time of 15 days, for running a stop sign; 8 hours of community service, with default time of 5 days, for improper lane usage; and 16 hours of community service, with default time of 5 days, for driving without a license.  He was ordered to pay and to show proof of completion of community service or face contempt on December 12, 2016.

106.    Mr. Moses returned to the City Court on December 12, 2016, but did not have the money to pay his outstanding fines and court costs and had not completed his community service.  Defendant Black gave him an extension of time to pay and complete his community service until February 13, 2017.

107.    Mr. Moses faces an imminent threat that he will be jailed because he cannot afford to pay the $333 in total fines and costs that he owes the City Court.

108.    Mr. Moses's right to an impartial judge will be violated if he appears in the City Court on February 13, 2017, and any subsequent dates ordered by the City Court.  The City Court's unconstitutional funding structure creates an appearance that Defendant Black cannot impartially adjudicate whether Mr. Moses willfully failed to pay or failed to comply with other court orders because Defendant Black has a financial interest in extorting money from him to pay for the City Court's continued operation.

### iii.    Plaintiff Benny Graham

109.    Plaintiff Benny Graham appeared in front of Defendant Black on November 14, 2016, and pleaded guilty to resisting arrest.

110.    Defendant Black sentenced Mr. Graham to pay a $200 fine, plus court costs, by January 23, 2017, and default time of 30 days, for the resisting arrest charge.  He fears he will be forced to serve the default jail time if he does not pay the fine and court costs by that date.

111.    Mr. Graham faces an imminent threat that he will be jailed because he cannot afford to pay the $200 in total fines and costs that he owes the City Court.

112.    Mr. Graham's right to an impartial judge will be violated if he appears in the City Court on January 23, 2017, and any subsequent dates ordered by the City Court.  The City Court's unconstitutional funding structure creates an appearance that Defendant Black cannot impartially adjudicate whether Mr. Graham willfully refused to pay or failed to comply with other court orders because Defendant Black has a financial interest in extoring money from him to pay for the City Court's continued operation.

iv.     **Plaintiff James Lorio**

113.     Plaintiff James Lorio appeared in front of Defendant Black on October 31, 2016, and pleaded guilty to criminal mischief.

114.     Defendant Black sentenced Mr. Lorio to a suspended sentence of 6 months in jail with the condition that he complete 1 year of unsupervised probation, pay a $100 fine, pay a $40 public defender fee, complete substance use treatment, and perform 40 hours of community service before December 12, 2016.

115.     Defendant Black explained to Mr. Lorio that the community service consists of picking up litter with the Bogalusa Police Department for eight hours on Saturdays.

116.     Because Mr. Lorio works on Saturdays, he had to take two days off of work to complete his community service hours.

117.     On December 12, 2016, Mr. Lorio returned to the City Court after paying his fine and costs, but had not completed his community service.  Mr. Lorio tried to explain to Defendant Black that he works every Saturday, has already taken two days off of work to complete the community service, and cannot complete the remaining hours of community service without losing his job.

118.     Defendant Black, however, would not listen to Mr. Lorio and did not offer Mr. Lorio alternative options to fulfill the reminder of his community service sentence.  One of the City Court clerks told him he would serve jail time if he did not complete the community service by February 13, 2017.

119.     If Judge Black had offered Mr. Lorio other days to complete the community service, he would be able to complete his community service sentence without losing his job and without facing the possibility of jail.

120.    Mr. Lorio will be arraigned on January 9, 2017, and January 23, 2017, for two other traffic tickets for driving with a suspended license.  He fears he will be sentenced to additional fines and costs that he will not be able to pay and to additional community service hours, which he will not be able to complete without losing his job or facing jail time.

121.    Mr. Lorio faces an imminent threat that he will be jailed because he cannot complete his community service sentence—and won't be able to complete any future community service sentence—without losing his job, and because he does not have the money to pay his fines and court costs that he owes and will owe the City Court.

122.    Mr. Lorio's right to an impartial judge will be violated if he is forced to appear in the City Court on February 13, 2017, or on any subsequent date.   The City Court's unconstitutional funding structure creates an appearance that Defendant Black cannot impartially adjudicate whether Mr. Lorio willfully failed to pay or to complete the community service because Defendant Black has a financial interest in extorting money from him to pay for the City Court's continued operation.

### v.    Plaintiff Marisa Pam

123.     Plaintiff Marisa Pam appeared in front of Defendant Black on October 31, 2016, and pleaded guilty to disturbing the peace.

124.    Defendant Black sentenced Ms. Pam to 1 year unsupervised probation and 90 days in jail suspended on the condition that she pay a $100 fine plus costs and complete marriage counseling on or before December 12, 2016.

125.    Ms. Pam returned to the City Court on December 12, 2016, but did not have the money to pay her fine and costs because of her limited financial means.  Although she asked for an extension of time to pay her fine and court costs, Judge Black refused.

126.    Without any inquiry into her ability to perform community service, Defendant Black converted Ms. Pam's fine and costs to 40 hours of community service and told her that she would have to pick up litter on Saturdays at the jail.

127.    Ms. Pam explained to Defendant Black that she could not complete the community service because she suffers from severe chronic pain as a result of a car accident that broke four ligaments in her neck.

128.    Defendant Black would not consider any other community service option, told Ms. Pam to "try it out," and gave her a summons, which threatened to hold her in contempt if she did not complete the community service before February 13, 2017.  When she left court, she started crying because she knew that she would not be able to complete Defendant Black's order of community service due to her neck injuries and chronic pain.

129.    Even if she was not disabled, it would be difficult, if not impossible, for Ms. Pam to complete the community service within the time period ordered: there are only nine Saturdays between her court dates, including Christmas Eve and New Year's Eve (when no community service was available), and generally the jail only offers community service for four or eight hours each Saturday.  Ms. Pam therefore needs at least 10 Saturdays to complete her community service.

130.    Ms. Pam faces an imminent threat that she will be jailed because she cannot complete the community service or pay the fine and court costs that she owes the City Court.

131.    Ms. Pam's right to an impartial judge will be violated if she appears in the City Court on February 13, 2017, and any subsequent dates ordered by the City Court.  The City Court's unconstitutional funding structure creates an appearance that Defendant Black cannot impartially adjudicate whether Ms. Pam willfully failed to complete the community service

24

because Defendant Black has a financial interest in extorting money from her to pay for the City Court's continued operation.

    **F.**    **Plaintiffs Rozzie Scott, Ebony Roberts, Latasha Cook and Robert Levi Paid an Illegal $50 Extension Fee in Their Criminal Cases before a Judge with an Unconstitutional Conflict of Interest.**

    **i.**    **Plaintiff Rozzie Scott**

132.   Plaintiff Rozzie Scott appeared in front of Defendant Black on May 12, 2016, and was found guilty of stealing $5 worth of food from a local store to feed his family.

133.   Defendant Black ordered Mr. Scott to pay a $450 fine plus costs on or before June 13, 2016.

134.   Mr. Scott returned to the City Court on June 13, 2016, but did not have the money to pay his fine and court costs. After telling Defendant Black that he could not pay, Defendant Black asked him if he had $50 for an extension of time to pay the fine and costs.

135.   After Mr. Scott told Defendant Black that he did not have $50, Defendant Black told Mr. Scott to sit in a chair on the side of the courtroom and wait for his arrest. Defendant Black never asked him why he did not have the money or whether he was working.

136.   While Mr. Scott waited, Defendant Black told other defendants that they would go to jail if they could not pay the extension fee or their fines plus costs.

137.   At the end of court, Mr. Scott was arrested and booked into the City jail, where he spent about four hours until his cousin paid the $50 extension fee for his release.

    **ii.**    **Plaintiff Ebony Roberts**

138.   Plaintiff Ebony Roberts appeared in front of Defendant Black on March 21, 2016, and pleaded guilty to speeding and driving without a license.

139.    Defendant Black sentenced Ms. Roberts to pay a fine amount, plus costs on or before April 25, 2016, for speeding and for driving without a license.  She later learned it was a total of about $367.50 in fines and court costs for the speeding ticket and $262.50 in fines and court costs for the ticket for driving without a license.

140.    Ms. Roberts returned to the City Court on April 25, 2016, but did not have the money to pay her fines and court costs.  Defendant Black did not ask Ms. Roberts whether she was working or why she could not pay.  He did not offer her a payment plan or community service.  He told Ms. Roberts she had to pay the fines and costs or she would go to jail for not paying her traffic tickets.

141.    After Ms. Roberts paid the $50, she was ordered to return to the City Court on June 13, 2016, to pay the fines and court costs on her two traffic tickets.

142.    Ms. Roberts returned to the City Court on June 13, 2016, and paid $262.50 on her ticket for driving without a license after borrowing the money from her family.  However, she did not have the money to pay her fine or court costs on the speeding ticket.  Defendant Black did not give Ms. Roberts an opportunity to tell him that she did not have any money and was just trying to do her best to take care of her two-year-old daughter.

143.    Before Ms. Roberts could say anything, Defendant Black told her "this was [her] last extension."  A court employee then escorted her out of the courtroom to pay an additional $50.  There were so many people standing in line to pay the extension fee that there were even a couple of people that could not fit in the courthouse and had to stand outside.

144.    After Ms. Roberts told a court employee that she could not pay $50, he told Ms. Roberts that she could not leave the City Court and would go to jail if she did not pay the money.

He ordered Ms. Roberts to go back into the courtroom where several other people were also facing arrest for non-payment.

145.    Ms. Roberts's boyfriend left the City Court to get $50 as fast as he could to purchase Ms. Roberts's freedom.

### iii.    Plaintiff Latasha Cook

146.    Plaintiff Cook appeared in front of Defendant Black on June 1, 2015 and pleaded guilty to disturbing the peace.

147.    Defendant Black sentenced Ms. Cook to a suspended sentence of 90 days in jail with the condition that she pay a $300 fine plus court costs and complete substance abuse treatment.

148.    Ms. Cook returned to the City Court on July 13, 2015, but did not have the money to pay the fine and court costs because she was unemployed and her only source of income at the time was the disability check she received each month.

149.    Defendant Black did not ask Ms. Cook why she did not have the money to pay her fine and court costs.  Instead, Ms. Cook paid the City Court the $50 extension fee to receive additional time to pay the fine and court costs.

150.    Ms. Cook has previously gone to jail because she did not have the money to pay her fine and court costs.  Judge Black asked Ms. Cook on that date whether she had $50 to pay for a new court date.  Because she did not have $50 in her pocket, a marshal handcuffed Ms. Cook and booked her into the City jail.

### iv.    Plaintiff Robert Levi

151.    Plaintiff Levi appeared in front of Defendant Black in November 2015 and pleaded guilty to running a stop sign and driving with expired insurance.

152.    Defendant Black sentenced Mr. Levi to pay a $100 fine plus court costs and 30 days default time for driving with expired insurance and a $50 fine plus court costs and 15 days default time for running a stop sign.

153.    Mr. Levi returned to the City Court in January 2016, but did not have the money to pay his fine and court costs.  Judge Black did not ask him why he did not have the money at his January 2016 court date.  Instead, Mr. Levi observed two people arrested for not paying fines and court costs.  Mr. Levi was scared that he would go to jail, too, because he did not have the money to pay his traffic tickets.

154.    Mr. Levi overheard a city court employee tell a woman that she could pay an additional $50 for an extension of time to pay instead of going to jail.

155.    Mr. Levi agreed to pay $50 in addition to his fine and court costs because he realized he would go to jail if he did not pay it.  He had planned to use that money to pay for other bills that day, which he was late paying after giving the money to the City Court.

156.    Mr. Levi returned to the City Court in March 2016 to pay his fine and court costs, but was $40 short of the amount he owed.  He asked a city court employee outside of the courtroom whether he could make a partial payment.  The city court employee told him that Judge Black "does not take partial payments" and that he "better call somebody!" because Judge Black is "gonna lock you up!" if he did not come up with the remaining $40.

157.    Mr. Levi borrowed the outstanding $40 from a friend and paid his traffic tickets in full to avoid going to jail.

## V.        <u>CLASS ALLEGATIONS</u>

158.    Plaintiffs seek to certify a Class and Subclass for equitable relief, and a separate Class for damages.

159.    Plaintiffs Lorio, Graham, Bolgiano, Moses, and Pam seek class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(2), related to Claim One only.  This class is defined as: All individuals who will appear in the Bogalusa City Court for criminal cases or who have unpaid fines and costs assessed by and owed to the City Court.  This class is referred to as the "Structural Bias Equitable Class."

160.    Plaintiffs Lorio, Graham, Bolgiano, Moses, and Pam seek certification of a Subclass pursuant to Fed. R. Civ. P. 23(a) and (b)(2), related to Claims Two, Three, Four and Six only.  This subclass is defined as: All individuals who were or will be adjudicated guilty in the Bogalusa City Court, who have been or will be given a future date by which to return to City Court, and who have not paid the assessed fines and costs in full or have not completed the assessed community service prior to returning to City Court.  This Subclass is referred to as the "Pay Date Equitable Subclass."   All members of the Pay Date Equitable Subclass are also members of the Structural Bias Equitable Class.

161.    Plaintiffs Roberts, Scott, Cook, and Levi seek class certification pursuant Fed. R. Civ. P. 23(a) and (b)(3), related to Claim Five only.  This class is defined as: Any individual that paid an extension fee between June 22, 2015 and the present.  This class is referred to as the "Extension Fee Damages Class."

162.    Rule 23(a)(1), Impracticability of Joinder: The precise size of the classes and subclass are unknown by Plaintiffs but is substantial.  The Structural Bias Equitable Class is forward-looking and consists of persons appearing in approximately 3,000 criminal traffic and misdemeanor cases filed in the Bogalusa City Court per year.  The Pay Date Equitable Subclass is forward-looking and consists of persons who may be subjected to paying an illegal extension fee or being put in jail for non-payment or failure to complete community service; in the past

year this occurred to more than 40 persons.  The Extension Fee Damages Class consists of persons who paid the extension fee in the last year, which occurred at least 100 times.  Many of the class members and most of the subclass members are low-income individuals who will likely lack independent resources to bring an independent action or to be joined in this action.  Joinder of every member of the class and the subclass would be impracticable.

163.    Rule 23(a)(2), Commonality: Plaintiffs raise claims based on questions of law and fact that are common to, and typical of, the putative class members they seek to represent.

a.    Questions of law and fact common to the Structural Bias Equitable Class include:

i.    Whether the City Court has a policy of assessing either $30 or $29.50 in court costs according to a fee schedule;

ii.    Whether court costs are imposed when individuals in the City Court are adjudicated guilty but not when they are adjudicated not guilty;

iii.    Whether Defendant Black conducts an inquiry into ability to pay before sentencing an individual to, or activating an individuals', default time for non-payment;

iv.    Whether Defendant Black conducts an inquiry into ability to pay before ordering an individual to jail for non-payment of fines and court costs;

v.    Whether judicial expense funds are used to pay for the City Court's operating and other expenses;

vi.    What percentage of the City Court's total budget is derived from judicial expense funds;

vii.    Whether Defendant Black has control over the allocation of judicial expense funds in his executive capacity for the City Court;

viii.   Whether court costs, extension fees, community service enrollment fees, and contempt fees are deposited into the judicial expense account;

ix.   Whether the City Court created a $50 "extension fee" and $25 community service "enrollment fee;"

x.   Whether the City Court permitted Defendant Black to offer to some defendants the option of paying a $50 extension fee to buy their freedom and additional time to pay their monetary penalties;

xi.   Whether Defendant Black has a policy or practice of sentencing an individual to serve 15 days in jail or to pay a $250 contempt fee if the individual fails to appear to pay her fines and court costs;

xii.   Whether the City Court's funding structure creates a structural conflict of interest that violates due process; and

xiii.   Whether injunctive and declaratory relief is appropriate and if so, what the terms of such relief should be.

b.   Questions of law and fact common to the Pay Date Equitable Subclass include:

i.   Whether Defendant Black appoints counsel at pay date proceedings or provides alternative safeguards;

ii.   Whether Defendant Black assesses a person's ability to pay prior to their jailing for non-payment;

iii.   Whether Defendant Black assesses alternatives to incarceration under the threat of incarceration before jailing persons for non-payment who were unable to pay;

iv.   Whether the alternatives to incarceration for those who are unable

to pay are reasonable and proportional to a monetary penalty for those who are able to pay;

v.      Whether the City Court has a policy or practice of authorizing Defendant Black to offer to some defendants the option of paying a $50 extension fee to buy their freedom and additional time to pay their monetary penalties;

vi.     Whether the City Court has a policy or practice of authorizing Defendant Black to require some defendants to pay a $25 community service "enrollment fee" in order to complete court-ordered community service and avoid being found in contempt of court;

vii.    Whether Defendant Black assesses a person's ability to pay prior to offering a $50 extension fee to some people during pay dates;

viii.   Whether it is lawful for Defendant Black to order individuals to jail for non-payment of fines and court costs without inquiring into, and making factual findings about, an individual's ability to pay;

ix.     Whether it is lawful for Defendant Black to threaten incarceration but to permit individuals to pay a $50 extension fee to stay out of jail;

x.      Whether it is lawful for Defendant Black to require payment of a $25 community service "enrollment fee" in order to complete court-ordered community service and avoid being found in contempt of court;

xi.     Whether it is lawful for Defendant Black to order individuals to jail for non-payment of fines and court costs without providing counsel at the time of jailing, and without providing any sort of notice regarding the purpose of the pay date hearing in advance of said hearing or other procedural safeguards; and

xii.    Whether injunctive and declaratory relief is appropriate and if so, what the terms of such relief should be.

    c.  Questions of law and fact common to the Extension Fee Damages Class include:

      i.  Whether court costs, extension fees, and contempt fees are deposited into the judicial expense account;

      ii.  Whether the City Court created a $50 "extension fee;"

      iii.  Whether the City Court permits Defendant Black to offer to some individuals the option of paying a $50 extension fee to buy their freedom and additional time to pay their monetary penalties;

      iv.  Whether any state law authorizes the City Court to charge individuals an extension fee in order to receive additional time to pay fines and court costs;

      v.  Whether due process permits offering a choice between paying an unauthorized extension fee or going to jail for non-payment; and

      vi.  Whether damages are appropriate and if so, what the terms of such relief should be.

  164.  Rule 23(a)(3), Typicality: The claims of Plaintiffs Lorio, Graham, Bolgiano, Moses, Pam, Roberts, Scott, Cook, and Levi are typical of those asserted on behalf of the proposed classes and subclass.  The injuries of Plaintiffs Lorio, Graham, Bolgiano, Moses, Pam, Roberts, Scott, Cook, and Levi all arise out of Defendants' policies, practices, and customs.

  165.  Rule 23(a)(4), Adequacy: Plaintiffs Lorio, Graham, Bolgiano, Moses, Pam, Roberts, Scott, Cook, and Levi will fairly and adequately protect the interests of the proposed classes and subclass.  Plaintiffs are represented by attorneys from the Southern Poverty Law Center, who have experience in class-action litigation involving civil rights law, as well as experience litigating policies and practices in municipal courts that are unconstitutional.  Counsel

has the resources, expertise and experience to prosecute this action. Counsel knows of no conflict among members of the proposed class.

166.    Rule 23(b)(2): Defendant Black has acted on grounds generally applicable to the Structural Bias Equitable Class and Pay Date Equitable Subclass, making declaratory and injunctive relief with respect to the class and subclass as a whole appropriate and necessary.

167.    Rule 23(b)(3): The common questions of fact and law predominate over the questions of law and fact affecting individual members of the Extension Fee Damages Class, and a class action is a superior method to adjudicate these claims, making it appropriate to decide the damages claims through the class mechanism. Particularly, the factual and legal questions surrounding the general policies and practices of the City Court apply equally to all members of the Damages Class. Furthermore, class members have little ability to pursue these claims individually, and it would be in the interest of judicial economy to adjudicate the constitutionality of the City Court's policies and practices in one proceeding.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Fourteenth Amendment to the U.S. Constitution**
**(Structural Conflict of Interest – Due Process)**
*Plaintiffs Lorio, Graham, Bolgiano, Moses, and Pam, and the Structural Bias Equitable Class versus*
*Defendant Black in His Individual and Official Capacities*

168.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

169.    The Due Process Clause requires Defendant Black to impartially adjudicate cases as well as maintain the appearance of impartiality.

170.    Defendant Black exercises judicial functions when presiding over cases in the City Court and executive functions over the City Court's finances and collection practices.

171. Defendant Black, in his administrative and executive role, has the duty to create a budget and to raise money to pay for the City Court's operating expenses, and he has the ultimate discretion and control over spending court costs, extension fees, and contempt fees deposited into the judicial expense account.

172. Defendant Black, in his executive and administrative role, and as the final policymaker for the City Court, established a policy, practice, or custom of creating a budget that relies on judicial expense funds to make up a substantial part of the City Court's budget. This policy, practice, or custom is the moving force behind the violations of Plaintiffs' constitutional rights.

173. The manner in which the City Court is funded creates a structural conflict of interest between Defendant Black's duty to impartially adjudicate cases and his executive responsibility to raise money to pay for the City Court's operating expenses, in violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

174. There is an on-going controversy between Plaintiffs Lorio, Graham, Bolgiano, Moses, and Pam and Defendant Black. Plaintiffs are scheduled to appear in the City Court in the future, and will appear before a judge with a structural conflict of interest.

175. Accordingly, pursuant to 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 1983, Plaintiffs Lorio, Graham, Bolgiano, Moses, and Pam, on behalf of themselves and the Structural Bias Equitable Class, seek a declaration and injunction against Defendant Black in his individual and official capacities to prevent future injury resulting from the conflict of interest created by Defendant Black acting under color of law in his individual and official capacities.

## SECOND CLAIM FOR RELIEF
### Fourteenth Amendment to the U.S. Constitution
### (*Bearden* Violation — Due Process and Equal Protection)
*Plaintiffs Lorio, Graham, Bolgiano, Moses, and Pam and the Pay Date Equitable Subclass*
*versus*
*Defendant Black in His Individual and Official Capacities*

176.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

177.    The Fourteenth Amendment's Due Process and Equal Protection Clauses prohibit incarcerating individuals for non-payment without first determining that they willfully refused to make a monetary payment.

178.    There is an on-going controversy between Plaintiffs Lorio, Graham, Bolgiano, Moses, and Pam and Defendant Black.  Plaintiffs are scheduled to appear in the City Court in the future and will likely be unable to pay their monetary penalties.  Pursuant to his practice, Defendant Black will likely fail to make an inquiry into Plaintiffs' ability to pay or complete community service before sentencing them to jail for non-payment or failure to complete community service.

179.    Plaintiffs Lorio, Graham, Bolgiano, Moses, and Pam, as well as those similarly situated, will be subject to confinement and other imminent injury in the future if Defendant Black's policies, practices, and customs are not declared to be unconstitutional.

180.    Declaratory relief is likely unavailable because Plaintiffs Lorio, Graham, Bolgiano, Moses, and Pam are required to appear in the City Court in January and February, 2017, and likely again after the Agreement expires.  There will likely not be sufficient time before their hearings for this Court to reach a final determination on Plaintiffs' declaratory judgment claim.  As such, Plaintiffs Lorio, Graham, Bolgiano, Moses, and Pam, as well as those similarly situated, may alternatively seek a preliminary injunction to protect them from the

injuries that will be caused by Defendant Black's unconstitutional policies, practices, and customs.

181.    Accordingly, pursuant to 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 1983, Plaintiffs Lorio, Graham, Bolgiano, Moses, and Pam, on behalf of themselves and the Pay Date Equitable Subclass, seek a declaration, or if unavailable, a preliminary injunction, to prevent future injury caused by Defendant Black acting under color of state law in his individual and official capacities.

**THIRD CLAIM FOR RELIEF**
**Fourteenth Amendment to the U.S. Constitution**
**(Right to Counsel – Due Process)**
*Plaintiffs Lorio, Graham, Bolgiano, Moses, and Pam, and the Pay Date Equitable Subclass*
*versus*
*Defendant Black in His Individual and Official Capacities*

182.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

183.    There is an on-going controversy between Plaintiffs Lorio, Graham, Bolgiano, Moses, and Pam and Defendant Black.  Plaintiffs are scheduled to appear in the City Court in the future, and will likely be unable to pay their monetary penalties or complete community service. Pursuant to his practice, Defendant Black will likely fail to appoint counsel or provide alternative safeguards before requiring them to pay illegal fees or ordering them to jail for non-payment or failure to complete community service. Defendant Black also will not provide notice to Plaintiffs that their ability to pay or perform the community service will be a critical issue in these proceedings.

184.    The practices described in the previous paragraph constitutes a violation of the Fourteenth Amendment's Due Process Clause.

185.    Plaintiffs Lorio, Graham, Bolgiano, Moses, and Pam, as well as those similarly

situated, will be subject to payment of an illegal fee, confinement, and other imminent injury in the future if Defendant Black's policies, practices, and customs are not declared to be unconstitutional.

186.     Pursuant to 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 1983, Plaintiffs Lorio, Graham, Bolgiano, Moses, and Pam, on behalf of themselves and the Pay Date Equitable Subclass, seek a declaration to prevent future injury caused by Defendant Black acting under color of state law in his individual and official capacities.

**FOURTH CLAIM FOR RELIEF**
**Fourteenth Amendment to the U.S. Constitution**
**(Substantive Due Process)**
*Plaintiffs Lorio, Graham, Bolgiano, and Moses, and the Pay Date Equitable Subclass*
*versus Defendant Black in His Individual and Official Capacities*

187.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

188.     The Fourteenth Amendment prohibits the government from depriving someone of liberty or property in an arbitrary or capricious manner.

189.     Defendant Black, in his executive and administrative role, and as the final policymaker for the City Court, established a policy, practice, or custom of creating an "extension fee" that persons could pay in order to avoid going to jail.  This policy, practice, or custom is the moving force behind the violations of Plaintiffs' constitutional rights.

190.     Defendant Black's policies, practices, customs, acts, and omissions risk conditioning Plaintiffs Lorio, Graham, Bolgiano, and Moses's liberty on paying an illegal extension fee to the City Court's judicial expense account.

191.     Conditioning an individual's liberty on the payment of the extension fee is arbitrary and capricious because there is no statutory or other authority for the extension fee, in

violation of the Due Process Clause of the Fourteenth Amendment.

192.    There is an on-going controversy between Plaintiffs Lorio, Graham, Bolgiano, and Moses and Defendant Black.  Plaintiffs are scheduled to appear in the City Court in the future, and will likely be unable to pay their monetary penalties.  Pursuant to his practice, Defendant Black will likely order Plaintiffs to jail for non-payment if they fail to pay the $50 extension fee.

193.    Plaintiffs Lorio, Graham, Bolgiano, and Moses, and those similarly situated, will be subject to confinement and imminent injury if Defendants' policies, practices, and customs are not declared to be unconstitutional.

194.    Plaintiffs Lorio, Graham, Bolgiano, and Moses, on behalf of themselves and the Pay Date Equitable Subclass bring this claim pursuant to 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 1983 for actions taken by Defendant Black under color of state law and seek a declaration against Defendant Black in his individual and official capacities to prevent future injury.

### FIFTH CLAIM FOR RELIEF
### Fourteenth Amendment to the U.S. Constitution
### (Extension Fee — Procedural Due Process)
*Plaintiffs Roberts, Scott, Cook, Levi, and the Extension Fee Damages Class versus*
*Defendants Bogalusa City Court and Defendant Black in his Official Capacity*

195.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

196.    Defendant Black, in his executive and administrative role, and as the final policymaker for the City Court, established a policy, practice, or custom of creating an "extension fee" that persons could pay in order to avoid going to jail.  This policy, practice, or custom is the moving force behind the violations of Plaintiffs' constitutional rights.

197.    Defendant Black, in his judicial capacity, utilizes this policy, practice, or custom

to deprive individuals of their property in a manner not authorized by state law by having them pay a $50 extension fee to Defendant City Court to avoid going to jail for non-payment of their monetary penalties.

198.   Plaintiffs Roberts, Scott, Cook, and Levi and the proposed Extension Fee Damages Class have paid the extension fee to the City Court.

199.   Plaintiffs Roberts, Scott, Cook, and Levi and the proposed Extension Fee Damages Class have a property interest in the extension fee they paid to the City Court.

200.   Defendants deprived Plaintiffs of their property in a manner not authorized by state law by having them pay a $50 extension fee to avoid going to jail for non-payment of their monetary penalties.

201.   Plaintiffs Roberts, Scott, Cook, and Levi, on behalf of themselves and the Extension Fee Damages Class, bring this claim pursuant to 42 U.S.C. § 1983 for actions taken by Defendant Black under color of state law and seek an award of damages for their injuries from Defendant Bogalusa City Court and Defendant Black, sued in his official capacity, by charging Plaintiffs the illegal extension fee.

### SIXTH CLAIM FOR RELIEF
**Fourteenth Amendment to the U.S. Constitution**
**(Unauthorized  Fees— Procedural Due Process)**
*Plaintiffs Lorio, Graham, Bolgiano, and Moses, and the Pay Date Equitable Subclass*
*versus*
*Defendant Black in his Individual and Official Capacities*

202.   Plaintiffs re–allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

203.   Defendant Black, in his executive and administrative role, and as the final policymaker for the City Court, established a policy, practice, or custom of creating an "extension fee" that persons could pay in order to avoid going to jail, and later a $25 fee to

participate in community service.  This policy, practice, or custom is the moving force behind the violations of Plaintiffs' constitutional rights.

204.   Defendant Black, in his judicial capacity, utilizes this policy, practice, or custom to deprive individuals of their property in a manner not authorized by state law.

205.   There is an on-going controversy between Plaintiffs Lorio, Graham, Bolgiano, and Moses, and members of the Pay Date Equitable Subclass and Defendant Black.  Plaintiffs are scheduled to appear in the City Court in the future and will likely be unable to pay their monetary penalties.  The City Court has repeatedly used illegal fees in the past, and is going to need to raise increased revenue in the near future.

206.   Plaintiffs Lorio, Graham, Bolgiano, and Moses have a property interest in the illegal  fees they will be asked to pay pursuant to the Bogalusa City Court policy.

207.   Plaintiffs Lorio, Graham, Bolgiano, and Moses, as well as those similarly situated, will be subject to payment of an illegal fee in the future if Defendant's policies, practices, and customs are not declared to be unconstitutional.

208.   Pursuant to 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 1983, Plaintiffs Lorio, Graham, Bolgiano, and Moses, on behalf of themselves and the Pay Date Equitable Subclass, seek a declaration and an injunction, to prevent future injury caused by Defendant Black acting under color of state law in his individual and official capacities.

## VII.      PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

a.      Assume jurisdiction over this action;

b.      Certification of a class, referred to above as the Structural Bias Equitable Class, under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, represented by Plaintiffs

Lorio, Graham, Bolgiano, Moses, and Pam, related to Claim One;

  c. Certification of a subclass, referred to above as the Pay Date Equitable Subclass, under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, represented by Plaintiffs Lorio, Graham, Bolgiano, Moses, and Pam, related to Claims Two and Three, and Lorio, Graham, Bolgiano, and Moses, related to Claims Four and Six;

  d. Certification of a class, referred to above as the Extension Fee Damages Class, under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, represented by Plaintiffs Roberts, Scott, Cook, and Levi, related to Claim Five;

  e. Declaratory and injunctive relief;

  f. Compensatory damages;

  g. An award of prevailing party costs, including attorney fees, for Counts One, Four, Five and Six; and

  h. Such other relief as the Court deems just and appropriate.

DATED this 10th day of January, 2017.  Respectfully submitted,

      /s/ Ivy Wang_____
     Ivy Wang
     *On Behalf of Plaintiffs' Counsel*

     Ivy Wang
     SOUTHERN POVERTY LAW CENTER
     1055 St. Charles Avenue, Suite 505
     New Orleans, Louisiana 70130
     P: 504-228-7279
     F: 504-486-8947
     E: ivy.wang@splcenter.org

     Sara Zampierin* (Trial Attorney)
     Samuel Brooke*
     Micah West*
     Emily Early*
     SOUTHERN POVERTY LAW CENTER
     400 Washington Avenue

Montgomery, Alabama  36104
P: 334-956-8200
F: 334-956-8481
E: sara.zampierin@splcenter.org
E: samuel.brooke@splcenter.org
E: micah.west@splcenter.org
E: emily.early@splcenter.org

*Admitted pro hac vice*

**Attorneys for Plaintiffs**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date the foregoing document was filed through the Court's

CM/ECF filing system, and by virtue of this filing notice will be sent electronically to all counsel

of record, including the following:

E.B. "Ted" Dittmer, II
TALLEY, ANTHONY, HUGHES & KNIGHT, LLC
*Counsel for Defendants Robert Black and Bogalusa City Court*

Shannon B. Dirmann
Patricia Wilton
David Sanders
LOUISIANA DEPARTMENT OF JUSTICE
*Counsel for Defendants Robert Black and Bogalusa City Court*

DATED this January 10, 2017.

/s/ Ivy Wang
Ivy Wang