IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LATASHA COOK, ROBERT LEVI, EBONY ROBERTS, ROZZIE SCOTT, RICHARD BOLGIANO, BENNY GRAHAM, JAMES LORIO, BRADLEY MOSES, and MARISA PAM, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT J. BLACK, in his individual and official capacities, and BOGALUSA CITY COURT,<br><br>Defendants. | Case No. 2:16-cv-11024-ILRL-MBN<br>Section "B"(5) |

**REPLY IN SUPPORT OF PLAINTIFFS'
RENEWED MOTION FOR CLASS CERTIFICATION**

Defendant Black does not dispute that the proposed Class and Subclass meet the requirements of Fed. R. Civ. P. 23(a) and (b)(2). He instead argues that the case is moot because named Plaintiffs' claims are resolved, but fails to recognize that Plaintiffs' claims fall into two recognized mootness exceptions. He also argues that the case is moot because he has allegedly changed his practices, that the Court should abstain and that he has judicial immunity.  These arguments are not germane to certification, should be raised by separate motion, and are legally erroneous.  Thus, the Motion should be granted.

A. **Exceptions to Mootness Permit the Class Claims to Continue.**

Generally, when named plaintiffs' claims have expired and no class has yet been certified, the putative class action becomes moot.  But "[u]nder appropriate circumstances, . . . the relation back doctrine preserves a live controversy," and allows the court "to retain subject matter jurisdiction and proceed to the merits of the named plaintiff's class certification motion." *Mabary v. Hometown Bank, N.A.*, 276 F.R.D. 196, 202 (S.D. Tex. 2011).  Plaintiffs' proposed Class and Subclass meet two such recognized exceptions to mootness.

First, Plaintiffs' claims are "inherently transitory" because of the short duration in which any class member has a live claim.  Inherently transitory claims can avoid mootness under the relation back doctrine where the court "will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires," *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 399 (1980), and there is a "constantly changing putative class," *Goldstar Home Health Sys., Inc. v. Sebelius*, No. 4:12-CV-906-A, 2013 WL 3096190, at *8 (N.D. Tex. June 17, 2013) (internal quotations and citations omitted).

Second, Plaintiffs' claims are easily susceptible to being "picked off" due to Black's ability to recuse himself. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1050 (5th Cir.

1

Unit A July 1981) (mootness caused by "the defendant's purposive acts"). Thus, when the "defendant[] ha[s] the ability by tender to each named plaintiff effectively to prevent any plaintiff in the class from procuring a decision on class certification," the class certification should "relate back" to the filing of the complaint. *Id.* at 1047, 1050. This exception avoids "frustrat[ing] the objectives of class actions" and "wast[ing] judicial resources" by allowing a court to certify a proper class rather than "requiring multiple plaintiffs to bring separate actions."[1] *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

As applied to this case, exceptions to mootness are warranted. Defendant Black does not dispute that Plaintiffs had standing when the Amended Complaint and this Motion were filed:[2] each Plaintiff had upcoming pay date or compliance hearings in the City Court within approximately one month of the day they sought to join this case,[3] and each alleged that he or she faced an imminent threat of jailing and violation of their rights to an impartial judge.[4] Indeed, Defendant Black has admitted that he considers the fines and costs or community service due by the pay date, that he does not accept partial payments, and that he jailed or threatened to jail Plaintiffs at their pay date if they did not have money.[5] He also agrees that multiple

---

[1] *See also Wilson v. Gordon*, 822 F.3d 934, 947 (6th Cir. 2016) (citing cases).
[2] Plaintiffs sought leave to file the Amended Complaint (Doc. No. 64) on January 10, 2017, and filed the instant Motion once the Court granted leave on January 17, 2017. (Doc. Nos. 66, 68).
[3] Plaintiffs alleged, and Defendants admitted, that their "pay date" or compliance hearings were often set approximately forty to seventy days after their sentencing or after a previous pay date. *See* Am. Compl., Doc. No. 67, ¶¶ 100–01 (Bolgiano, 63 days), 104–06 (Moses, 42 days, second hearing 63 days), 113–14, 118 (Lorio, same), 123–24, 128 (Pam, same), 109–10 (Graham, 70 days); *see also* Ans., Doc. No. 73 (admitting relevant allegations). The longer periods of 60-70 days all occurred over the holiday period from December-January. Allegations of other Plaintiffs show that pay dates are generally set approximately 45 days from the previous hearing. See Am. Compl. ¶¶ 138, 140–41 (Roberts, 34 days, second hearing 49 days); ¶¶ 146–48 (Cook, 42 days); ¶¶ 132, 134 & Answer ¶¶ CXL (Scott, either 49 or 32 days).
[4] Am. Compl. ¶¶ 102, 103, 107, 108, 111, 112, 121, 122, 130, 131.
[5] *Id.*. ¶¶ 34-35, 50, 54, 134-37, 140; Ans. ¶¶ XLII-XLIII, LVIII, LXII, CXLII-CXLV, CXLVIII.

Plaintiffs faced an imminent threat of jailing at upcoming court dates.[6]

This Court was unable to rule on a motion for class certification before the named Plaintiffs finished their pay date hearings. Indeed, at *any* pay date hearing, the case could be closed if Plaintiff was ordered to jail, paid off her fine, or otherwise completed her sentence.[7] *Cf. Gerstein v. Pugh,* 420 U.S. 103, 110 n.11 (1975) (finding claims inherently transitory because pretrial custody "may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial"); *Swisher v. Brady*, 438 U.S. 204, 213–14 n.11 (1977) (same for claims of double jeopardy due to "rapidity of judicial review"); *Haro v. Sebelius*, 747 F.3d 1099, 1110 (9th Cir. 2014) (motion for class certification unlikely to be resolved one month after case filed); *Olsen v. Brown*, 594 F.3d 577, 579, 582–83 (7th Cir. 2010) (finding claims of inmates who averaged 139 days in custody were inherently transitory due to uncertainty about the length of time a claim will remain alive).

Moreover, Defendant Black's recusal from named Plaintiffs' cases renders the claims both inherently transitory and susceptible to being "picked off." The time for which equitable claims of named Plaintiffs or other proposed plaintiffs would remain alive is of an uncertain and short duration because Defendant could effectively end their claim by recusing at any time, as he did in a matter of days when he learned the identities of named Plaintiffs. *See Zeidman*, 651 F.2d at 1047; *Unan v. Lyon*, 853 F.3d 279, 287 (6th Cir. 2017) (claims inherently transitory if defendant may "quickly and unilaterally grant relief to an individual once litigation begins").

**B.  Defendant's Voluntary Cessation, Abstention, and Immunity Arguments Are Not Properly Before this Court and Should Not Be Considered.**

In ruling on a class certification motion, "the court *may only inquire into* whether the

---

[6] Ans. ¶¶ CX, CXV, CXIX.
[7] *See supra* n.5.

requirements of Fed. R. Civ. P. 23 have been satisfied, and *may not consider* whether plaintiffs have stated a cause of action or will prevail on the merits." *In re Great S. Life Ins. Co. Sales Practices Litig.*, 192 F.R.D. 212, 215 (N.D. Tex. 2000) (emphases added) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)). "Indeed, there is absolutely no support in the history of Rule 23 or legal precedent for turning a motion under Rule 23 into a Rule 12 motion to dismiss or a Rule 56 motion for summary judgment by allowing the district judge to evaluate the possible merit of the plaintiff's claims at this stage of the proceedings." *Miller v. Mackey Int'l, Inc.*, 452 F.2d 424, 428 (5th Cir. 1971). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013). Defendant Black's abstention and immunity arguments ask this Court to engage in the exact "free-ranging merits" analysis that the Supreme Court prohibits. *See id*.

First, the Opposition argues the First, Fourth, and Sixth Claims are moot because the City Court allegedly no longer deposits the money it collects from City Court defendants into an account over which Defendant Black has sole spending discretion, and no longer imposes the extension fee. These arguments speak to the merits of whether Plaintiffs succeed on their claims under the Fourteenth Amendment or whether Defendant Black has met his burden to show that he has definitively changed his unconstitutional practices, not to whether Rule 23 is met.[8]

Second, Defendant Black argues abstention under *Younger v. Harris*, 401 U.S. 37 (1971), requires denial of certification because this case may interfere with ongoing state court prosecutions. Yet *Younger*—which requires federal courts to refrain from enjoining state

---

[8] Black does not explain how cessation of practices related to the Fourth and Sixth claims could affect certification of the subclass, for practices tied to other claims of the subclass continue.

4

prosecutions "unless it plainly appears that this course would not afford adequate protection," *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982) (quoting *Younger*, 401 U.S. at 45)—goes to the merits of Plaintiffs' case and should not be considered at this stage. *See Ringswald v. Cty. of DuPage*, 196 F.R.D. 509, 512-13 (N.D. Ill. 2000) (granting certification and finding *Younger* abstention arguments inapposite to motion for class certification ); *Coleman v. Cty. of Kane*, 196 F.R.D. 505, 508 (N.D. Ill. 2000) (same).

Finally, Defendant Black raises "judicial immunity" to oppose Plaintiffs' request for *injunctive* relief, but does not categorically oppose the request for *declaratory* relief. This argument is not against certification; Rule 23(b)(2) requires *either* injunctive *or* corresponding declaratory relief, not both. Fed. R. Civ. P. 23(b)(2). His arguments relating to the exact scope of the remedy can be addressed on a dispositive motion or after trial.

In sum, the only relevant question at this stage is whether the requirements of Rule 23 are met. Defendant's voluntary cessation, abstention, and immunity arguments are not relevant to the pending Motion and are more appropriate for a dispositive motion or trial. Thus, Plaintiffs ask that the Court decline to consider these arguments at this stage, and instead require that they be raised by separate motion[9] so Plaintiffs can more fully respond to these jurisdictional and abstention issues after they have had the opportunity to exercise their right to obtain and present discovery on them.[10] *See Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981) (requiring "an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss"); *Wiltz v. Am. Sec. Ins. Co.*, No. CIV.A. 10-635, 2010 WL 4668355, at *5 (E.D. La.

---

[9] The Federal Rules require requests for relief be made by motion. Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010) (affirming denial of request made in response to motion).

[10] Discovery was stayed while settlement talks occurred, but has now commenced. Discovery closes August 29, 2017. (Sched. Order, Doc. No. 49).

Nov. 9, 2010) ("[W]here the question of jurisdiction is intertwined with the merits of the case, the proper course of action is to reserve for a later proceeding both the jurisdictional question and the merits of the case." (citations omitted)); *Trust & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 297 (7th Cir. 1994) (reversing decision to abstain because factual development was needed to assess conflict claim).

C.  **The Voluntary Cessation, Abstention, and Immunity Arguments Lack Merit.**

If the Court considers Defendant's arguments for voluntary cessation, abstention, and immunity, it should find that they are without merit.

1.  **Defendant Black's assertion of voluntary cessation does not moot the Case.**

Defendant Black has not met his burden of proving that the First, Fourth, and Sixth Claims are moot through representations that he has stopped some of the practices at issue. "[D]efendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice"; rather, "a defendant . . . bears the formidable burden of showing that it is *absolutely clear* the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 190 (2000) (emphasis added) (internal quotations and citations omitted). The critical question is "whether the defendant's actions are mere 'litigation posturing' or whether the controversy is extinguished." *Fontenot v. McCraw*, 777 F.3d 741, 748 (5th Cir. 2015).

The limited affidavit presented does not make "*absolutely clear*" that his practice of charging illegal fees could not reasonably be expected to recur. Defendant Black admitted that he charged illegal $50.00 extension fees in the past and that, since the Parties' temporary agreement not to assess these fees has expired, he is "no longer [] prohibited from requiring individuals to pay the illegal extension fee . . . or creating new fees to fund the City Court that

6

are unauthorized by state law."[11]  Defendant denies that this practice was illegal, instead alleging that this $50 fee was "previously imposed to cover the administrative costs of continuing and redocketing a hearing."[12]  *See United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 127 (5th Cir. 1973) ("[I]n the face of appellant's own inability to recognize his transgressions of the Act, we decline to assume that he will not violate the Act in the future."); *see also Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1187 (11th Cir. 2007).  Moreover, Defendant Black began imposing a $25 community service enrollment fee also unauthorized by law.[13]  Thus, the Court should not credit Defendant's bare assertions that he has fully ceased these practices.

Similarly, Defendant Black has not made "absolutely clear" that the newly created City account will ensure that a conflict of interest does not continue to exist and will not reasonably recur.  The affidavit's five-sentence description of the new process for depositing the City Court's funds and requesting withdrawals from that account to cover City Court expenses, Deleon Aff. at 3, does not provide sufficient information to examine whether or not "the economic realities make the design of the fee system vulnerable to a 'possible temptation' to the 'average man' as judge," *Brown v. Vance*, 637 F.2d 272, 284 (5th Cir. 1981), and thus, does not make it "absolutely clear" that the conflict of interest has ended.  Indeed, there is no description of the new budget approval process set up with the Mayor or any agreements or limitations on expenses that Defendant Black may request to be paid from this fund.

Moreover, this new City account exists under the same state law in effect when Plaintiffs

---

[11] Ans. ¶ CXLIX, CLI; Affidavit of Tonia Deleon ("Deleon Aff."), Doc. No. 86-1, at 3; Am. Compl. ¶ 67; Ans. ¶ LXXV.
[12] Delon Aff. at 3; Am. Compl. ¶ 90, Ans. ¶ XCVIII (noting Black is "aware of no specific statutory authority for the extension fee"); Am. Compl. ¶ 91, Ans. ¶ XCIX (denying allegation city courts are unauthorized to create new court costs and fees under state law).
[13] Am. Compl. ¶ 56, Ans. ¶ LXIV.  Though Defendant now asserts that this fee is a probation supervision fee, Deleon Aff. at 3–4, Plaintiffs do not have the benefit of discovery on this point.

7

filed their case, which requires the money to stay in a "special account" and "used for the operational expenses of the court . . . or other similar expenditures *as may be approved by the judge*." La. Stat. Ann. § 13:1899 (emphasis added). *Cf. Harrell v. The Fla. Bar*, 608 F.3d 1241, 1266–67 (11th Cir. 2010) (finding government actions "[s]hort of repealing a statute" could not be credited as unambiguous termination). The Court cannot conclude that this account was created to avoid the appearance of bias and change the fundamental nature of the City Court funding, rather than created in an effort to avoid litigation. *See, e.g.*, *Pederson v. La. State Univ.*, 213 F.3d 858, 874–75 (5th Cir. 2000) (defendants did not carry voluntary cessation burden due to failure to represent "that they are dedicated to ensuring equal opportunities and fair accommodation . . . in the long run" or that it would not disband the new programs); *Nat'l Ass'n of Bds. of Phar. v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1312 (11th Cir. 2011) (cessation not "result of any 'substantial deliberation' that would indicate a sincere change in position rather than an attempt to avoid the issuance of an injunction").

Finally, if the Court is not convinced that this argument lacks merit, Plaintiffs request leave to take discovery before an adverse ruling is entered because Plaintiffs have had no opportunity to obtain and present discovery on these jurisdictional issues. *See supra* pages 5–6.

**2.     Abstention is inappropriate because Plaintiffs lack an adequate state forum.**

"[F]ederal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not refus[e] to decide a case in deference to the States." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013) (internal quotations and citations omitted). Defendant Black alleges that Plaintiffs' claims fall into one of the exceptional classes of cases requiring federal court abstention pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), because relief in this case may interfere with ongoing state court prosecutions. *Younger*

8

requires federal courts to refrain from enjoining state prosecutions "unless it plainly appears that this course would not afford adequate protection.'" *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982) (quoting *Younger*, 401 U.S. at 435).

*Younger* abstention is not warranted here because Plaintiffs are unable to adequately raise their constitutional challenges in their state court proceedings given the City Court's "substantial pecuniary interest in legal proceedings." *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973). Thus, "the predicate for [abstention is] lacking," as the City Court and Defendant Black are "incompetent by reason of bias to adjudicate the issues pending before it." *Id.* at 577. The Supreme Court has consistently reaffirmed that a biased tribunal renders abstention inappropriate. *See Withrow v. Larkin*, 421 U.S. 35, 46 n.8 (1975); *Trainor v. Hernandez*, 431 U.S. 434, 441 (1977); *Kugler v. Helfant*, 421 U.S. 117, 124-25 n.4 (1975).

As explained above, this Court should not credit Defendant's bare assertions that it has resolved its conflict of interest. *See supra* pages 7–8. Plaintiffs provide detailed allegations and evidence about due process concerns, including the amount of money collected by the City Court, its significance to the City Court's overall funding, and the shortfall created by other sources of funding.[14] Abstention is inappropriate because Plaintiffs have shown "the potential for bias," and the Court may later order equitable relief upon a finding of a conflict. *See Geots v. Miss. Bd. of Veterinary Med.*, 986 F. Supp. 1028, 1032–33 (S.D. Miss. 1997). Alternatively, discovery is necessary before abstention can be properly considered. *See supra* pages 5–6.

### 3.  Defendant's claim of "Judicial Immunity"[15] is inapposite and incorrect.

Defendant Black misreads the Amended Complaint and § 1983 in arguing that injunctive

---

[14] Am. Compl. ¶¶ 68–88; Declaration of Micah West, Doc. No. 7 (with attachments).
[15] Defendant asserts "immunity," but his argument is actually whether an injunction is authorized by § 1983. *See Pulliam v. Allen*, 466 U.S. 522 (1984) (no judicial immunity bar to injunctions).

9

relief is inappropriate. While § 1983 generally prohibits an injunction against his judicial acts, there are two relevant limitations. First, § 1983 does not prohibit injunctions for acts committed in *non-judicial* capacities, including in administrative and executive roles. *See* 42 U.S.C. § 1983 (barring injunctive relief for claims "brought against a judicial officer for an act or omission taken in such officer's *judicial* capacity" (emphasis added)); *Forrester v. White*, 484 U.S. 219, 227 (1988) (noting "distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform"). Plaintiffs premise their request for injunctive relief under the First Claim on Judge Black's oversight and management of the City's Court's budget, funds, and expenses, and under the Sixth Claim on his actions in creating and maintaining unauthorized extension and community service fees for the City Court—acts performed in Black's administrative and executive capacities.[16] *See, e.g.*, *Ward v. Vill. of Monroeville, Ohio*, 409 U.S. 57, 58 (1972) (village finances is executive function); *Tumey v. State of Ohio*, 273 U.S. 510, 533 (1927) (same); *Alpha Epsilon Phi Tau Chapter Hous. Ass'n v. City of Berkeley*, 114 F.3d 840, 842 (9th Cir. 1997) (same for management of board budget). Thus, because the First and Sixth Claims for Relief seek to enjoin Defendant Black in his executive and administrative roles and not his judicial capacity, injunctive relief is possible.

Second, injunctive relief is available against judicial officers for judicial functions when "declaratory relief was unavailable." § 1983. Plaintiffs' request for injunctive relief under the Second Claim is limited to possibly seeking a preliminary injunction if needed to prevent future harm where declaratory relief is unavailable.[17] Plaintiffs are not presently seeking a preliminary injunction. Thus, this inquiry is premature.

---

[16] *See* Am. Compl. ¶¶ 171-72, 203; *see also id.* ¶¶ 28, 74-75, 77-78, 80, 89, 98.
[17] *See* Am. Compl. ¶¶ 180-81.

DATED this 8th day of May, 2017.            Respectfully submitted,

 /s/ Ivy Wang
Ivy Wang
SOUTHERN POVERTY LAW CENTER
1055 St. Charles Avenue, Suite 505
New Orleans, Louisiana 70130
P: 504-228-7279
F: 504-486-8947
E: ivy.wang@splcenter.org

 /s/ Samuel Brooke
Sara Zampierin* (Trial Attorney)
Samuel Brooke*
Micah West*
Emily Early*
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama 36104
P: 334-956-8200
F: 334-956-8481
E: sara.zampierin@splcenter.org
E: samuel.brooke@splcenter.org
E: micah.west@splcenter.org
E: emily.early@splcenter.org

*Admitted pro hac vice

**Attorneys for Plaintiffs**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this date the foregoing document via CM/ECF to the following attorneys of record for Defendants:

E.B. "Ted" Dittmer, II
Molly L. Manieri
TALLEY, ANTHONY, HUGHES & KNIGHT, LLC
2250 7th Street
Mandeville, Louisiana 70471
*Counsel for Defendants Robert Black and Bogalusa City Court*

Shannon B. Dirmann
Patricia Wilton
David Sanders
LOUISIANA DEPARTMENT OF JUSTICE
P.O. Box 94005
Baton Rouge, LA 70804-9005
*Counsel for Defendants Robert Black and Bogalusa City Court*

DATED May 8, 2017.                          /s/ Samuel Brooke